OPINION
On May 11, 2000, a complaint was filed in the Franklin County Court of Common Pleas on behalf of the city of London in Madison County, Ohio.[1]
The complaint sought both declaratory and injunctive relief. At the heart of this litigation is the "State Route 142 Road-Widening Project," involving the widening of a main thoroughfare, East High Street, also known as State Route 142, in London.
The named defendants in the lawsuit were Gordon Proctor, Director of the Ohio Department of Transportation ("ODOT"), and the "Committee o[n] East High Street c/o * * *" five individuals with addresses on East High Street (hereinafter, collectively, the "committee"). The committee opposes the road-widening project ("project"), citing several objections, including construction and traffic-related concerns, as well as aesthetics resulting from the loss of trees.
The underlying facts giving rise to this case are gleaned from the complaint filed by the city, along with certain documents attached thereto and other exhibits contained elsewhere in the record.
The project was formally initiated by the city in August 1992 pursuant to Emergency Ordinance 186-92, which approved the widening of State Route 142 from a two-lane to a three-lane road; added sidewalks, curbs, and gutters; and improved drainage and storm sewers. The ordinance authorized the city to enter into agreements with ODOT as necessary to complete the planning and construction of the project.
The planning process continued until May 1997, when another ordinance, Emergency Ordinance 146-97, was passed, directing the city to enter into agreements with ODOT "as necessary to complete the project."
Pursuant to Emergency Ordinances 186-92 and 146-97 (the "enabling ordinances"), the city and ODOT entered into a contract (the "project agreement") whereby ODOT agreed to undertake the planning and construction of the project, which was to be financed from state and federal funding sources estimated at approximately $5,200,000. These funds will not be available after June 30, 2001, as the money must be reallocated if not expended by that date. For that reason, resolution of this litigation must be expeditious.
The city, invoking reliance upon the project agreement, entered into a separate agreement for engineering studies necessary for the planning and construction of the project. According to the complaint, the city agreed to pay $400,000 for these studies.
The project agreement required ODOT, on behalf of the city, to secure legal title to rights-of-way necessary for the project. The complaint averred that, at the time of the filing of the complaint, ODOT had substantially fulfilled its obligation to obtain the requisite rights-of-way, expending over $500,000 and acquiring approximately seventy-seven parcels of property from certain city residents. Among some of the parcels already appropriated by ODOT are those previously owned by two committee members. At the time of the filing of this complaint, several other appropriation actions remained pending in the Madison County Court of Common Pleas. According to the record, those actions cannot proceed until this litigation is resolved.
On August 10, 1999, the committee filed an Initiative Petition with the Madison County Board of Elections, seeking to repeal the enabling ordinances.
In the November 1999 election, the petition was approved by a majority of the voters. As a result, ODOT advised the city that ODOT would not move forward on the project until issues related to the constitutionality of the ordinances and/or the Initiative Petition were resolved.
The city alleged that the passage of the Initiative Petition resulted in the following: (1) ODOT's inability to advance the project and its refusal to fulfill the terms of the project agreement; (2) disruption of all "reasonable expectations" pursuant to the project agreement; (3) substantial impairment of, "in effect abrogating," the contractual relationship between the parties; and (4) irreparable harm to the city if the issues are not resolved "almost immediately" because the city will lose the $5,200,000 state and federal funding if construction is not commenced by June 2001.
The relief sought by the city in this action is both injunctive and declaratory. The city's complaint primarily sought a judgment declaring that the Initiative Petition is unconstitutional, and that the project agreement is valid and enforceable. The corresponding injunctive relief sought was that necessary to proceed with the project.
At the July 20, 2000 initial status conference, the parties presented the pertinent issues to the trial court. Acknowledging that time was of the essence, the trial court entered an order modifying the case schedule which ordered the parties, inter alia, to file expedient dispositive motions. Discovery proceedings were to occur immediately.
A brief, two-page answer to the complaint was filed by the committee's counsel on August 1, 2000.
The city ultimately filed a Civ.R. 56(C) motion for summary judgment on August 14, 2000. The committee responded with motions to dismiss and for a change of venue, both of which were ultimately overruled.
On August 22, 2000, the committee's counsel filed a motion seeking an additional sixty days during which further discovery could be conducted to enable counsel to prepare a memorandum contra the city's motion for summary judgment. The trial court overruled the motion. Instead, on August 25, 2000, the court journalized a scheduling order modifying its earlier case schedule. The entry, journalized August 28, 2000, provides, in pertinent part:
 The Court has reviewed the Affidavit attached to the Motion [seeking the extension of time for discovery purposes] which was filed pursuant to Civ.R. 56(F) and finds, and counsel agreed at the status conference, that these facts can be stipulated. Discovery is not necessary.
The order proceeded to set a deadline for stipulations to be "signed, agreed to and filed with the court no later than September 7, 2000." The court also ordered that contemporaneous responses by all parties to all pending motions to be filed no later than September 21, 2000. Replies were to be filed by September 28. Finally, the court informed the parties that it would "issue a decision on all motions no later than October 15, 2000."
Notwithstanding the court's modified case scheduling order, counsel for the committee filed a motion on September 5, 2000, seeking yet another extension of time and a court order compelling the city to produce certain public records for discovery purposes.
Unsuccessful in obtaining further extensions, the committee finally filed its memorandum contra and cross-motion for summary judgment on September 21, 2000.
Pursuant to a decision rendered December 5, 2000,[2] and journalized January 4, 2001, the trial court ultimately granted the city's motion for summary judgment. The trial court's entry reads, in pertinent part:
 (a) the Project contract between Plaintiff and Defendant ODOT is valid and enforceable; and
 (b) the Initiative Ordinance is unconstitutional pursuant to Article I, Section 10 of the United States Constitution and Article II, Section 28 of the Ohio Constitution and, therefore, void ab initio.
 Therefore, this Court issues the following permanent injunction:
 (c) directing Director Proctor and ODOT to proceed with the Project pursuant to the Enabling Ordinances and the terms and conditions as set forth between ODOT and Plaintiff; and
 (d) enjoining the Committee from taking further and/or repeat legislative action to hinder or delay the Project.
On January 9, 2001, the committee filed its notice of appeal, expressly seeking an expedited appeal and docketing on the accelerated calendar "because contract bidding and construction could begin in the next several months." (Docketing Statement at 1.) However, on February 2, 2001, the committee also filed a motion seeking leave of this court to file a long brief, pursuant to Loc.R. 7(C). This court granted the motion and, in accord with local rules, sua sponte transferred the case from the accelerated to the regular calendar.
On March 12, 2001, the trial court denied the committee's motion to stay execution of its judgment. As a result, on March 15, the committee then sought a stay from this court. Pursuant to an entry journalized March 28, 2001, this court granted the motion to stay execution of the trial court's judgment pending appeal, conditioned upon the committee's posting a supersedeas bond in the amount of $5,200,000. No such bond has been posted. This court also granted the committee's March 15, 2001 motion for leave to expedite oral argument.
Turning now to the merits of the instant appeal, the committee assigns three errors for our consideration:
 [I]. The trial court abused its discretion in denying the committee's motion for additional time to conduct discovery in response to the city's motion for summary judgment.
 [II.] The trial court erred in granting summary judgment because genuine issues of material fact exist as to whether there was an unconstitutional impairment of contract.
 [III.] The trial court erred in granting injunctive relief.
By its first assignment of error, the committee argues that the trial court abused its discretion in denying the committee additional time to conduct discovery for purposes of responding to the city's motion for summary judgment. The committee relies upon Civ.R. 56(F), which provides:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
As indicated infra, the trial court's August 28, 2000 entry denying the extension explains:
 Counsel for the [committee] argues that he needs additional time, at least sixty (60) days to do discovery for purposes of responding to Plaintiff's Motion for Summary Judgment.
 The Court has reviewed the Affidavit attached to the Motion which was filed pursuant to Civil Rule 56(F) and finds, and counsel agreed at the status conference, that these facts can be stipulated. Discovery is not necessary. [Emphasis added.]
We initially note that the record evidences no formal objection or challenge by the committee with respect to the court's significant observation that the parties agreed that the pertinent facts could be presented via stipulation and that "[d]iscovery [was] not necessary."
Trial judges have broad discretionary authority over such matters as discovery proceedings and, thus, our review of this issue is limited to ascertaining whether the trial court abused its discretion. It is well-established that such a standard of review mandates affirming a trial court's decision absent a showing that the judge acted unreasonably, unconscionably or arbitrarily. See, e.g., Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
In Glimcher v. Reinhorn (1991), 68 Ohio App.3d 131, motion to certify overruled (1991), 62 Ohio St.3d 1475, the court addressed an analogous Civ.R. 56(F) issue. This court stated, at 137-138:
 * * * Civ.R. 56(F) provides a method by which a party may seek a continuance on a motion for summary judgment so that he may obtain affidavits opposing the motion or conduct discovery relevant to it. In paragraph two of the syllabus in Gates Mills Investment Co. v. Pepper Pike (1978), 59 Ohio App.2d 155 * * *, the court recognized this principle, holding:
 "If a party opposing a motion for summary judgment cannot present by affidavit facts which are sufficient to justify his opposition[,] he may seek a continuance or deferral of the court's action on the motion by filing affidavits which must state sufficient reasons why he cannot then present by affidavit facts essential to justify his opposition to the motion and why or how the continuance, deferral of action, or discovery would permit him to obtain such facts. Civ.R. 56(F)."
The court further recognized:
 "* * * Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion. * * * Id. at 169 * * *.
 As the court recognized, the burden is upon the party seeking to defer the court's action on a motion for summary judgment to demonstrate that a continuance is warranted.
 Relevant in this case, the court in Ball v. Hilton Hotels (1972), 32 Ohio App.2d 293 * * *, held * * *:
 "Where discovery proceedings would not, if allowed to proceed, aid in the establishment or negation of facts relating to the issue to be resolved, it is not an abuse of discretion for a court to grant a motion for summary judgment before such proceedings are completed." [Emphasis added.]
In this case, the trial court alluded to the rationale of the language emphasized immediately above. The apparent futility of further discovery proceedings would alone serve as a proper basis for finding no abuse of discretion here. However, the justification for overruling this assignment of error is manifold.
We could properly reject the committee's argument based solely upon a waiver theory. As mentioned above, the court found, and expressly observed that the parties had agreed, that the issues to be resolved were issues of pure law and the facts necessary for resolution of the case which were not already contained in the record could be presented via stipulation. Again, along the same line of reasoning, we could rely upon the similar notion set forth in the final paragraph quoted above essentially that further discovery proceedings would serve no purpose; additional discovery "would not aid in the establishment or negation of facts" necessary to resolve the real issues at hand.
Finally, as more fully developed in our discussion of the remaining assignments of error, based upon this record in toto, we cannot conclude that the trial court abused its discretion in denying the request for additional time to obtain further discovery. The committee has not demonstrated the requisite abuse of discretion and prejudice resulting from the trial judge's finding that the committee had simply failed to provide a sufficient basis for the requested extension. In a case demanding prompt resolution, the record fully supports the propriety of the trial court's resolution of the discovery issues.
The first assignment of error is overruled.
The committee's second assignment of error contends that the trial court erred in granting summary judgment because genuine issues of material fact exist "as to whether there was an unconstitutional impairment of contract."
Preliminarily, we set forth the well-established standards by which we are bound in reviewing a grant of summary judgment. Civ.R. 56 governs summary judgment, a procedural device designed to terminate litigation where a resolution of factual disputes is unnecessary. In particular, Civ.R. 56(C) provides, in pertinent part:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. * * *" Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103.
In addressing the appropriateness of rendering a Civ.R. 56 summary judgment, the Supreme Court of Ohio in Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, set forth the well-established initial requirements: (1) there is no genuine issue as to any material fact; (2) the movant is entitled to judgment as a matter of law; and, (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, the nonmovant being entitled to have the evidence construed most strongly in his favor. See, also, State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
Turning now to the committee's argument challenging the grant of summary judgment to the city, it contends that the trial court erred in finding that the Initiative Petition resulting in the repeal of the enabling ordinances is unconstitutional pursuant to Section 10, Article I
of the United States Constitution and Section 28, Article II of the Ohio Constitution.
Plainly speaking, the relevant constitutional provisions embody the "contract clauses" of both the federal and state constitutions. The contract clauses generally prohibit governments from passing any law "impairing the obligation of contracts. This prohibition reaches any form of legislative action, including direct action by the people." Middletown v. Ferguson (1986), 25 Ohio St.3d 71, 76. "`* * * [H]aving granted certain powers to a municipal corporation, which in turn enters into binding contracts with third parties who have relied on the existence of those powers, the legislature (or here, the electorate) is not free to alter the corporation's ability to perform.' (Emphasis added.)" Id. (Citation omitted.)
In declaring the Initiative Petition/repealing ordinance unconstitutional, the trial court, in its thorough, lengthy opinion, relied extensively upon Middletown, the Ohio Supreme Court's seminal case on the issues before us, particularly in light of its factual and legal parallels to those here. The committee argues that Middletown is distinguishable. We, however, agree with the city's position that the trial court was correct in deeming Middletown dispositive of this case.
In Middletown, property owners proposed an initiative ordinance to repeal all enabling legislation that related to city contracts with ODOT for a street-widening project. Observing that the prohibitions of the contract clauses are not absolute, the court adopted a two-prong analysis to determine the constitutionality of an ordinance which allegedly impairs the obligations of contract. The first inquiry asks whether the initiative ordinance operates as a "substantial impairment" of a contractual relationship. Second, if the impairment is substantial, can the prohibition of the contract clauses be harmonized with the initiative power reserved to the electorate and the reasonable necessity to serve an important public purpose?
The Middletown court's discussion of the first part of the analysis, that inquiring into the existence of a "substantial impairment," is directly on point here and applies with equal force:
 The primary thrust of this initiative ordinance * * * was to halt construction of the road improvement. Had the initiative ordinance been given effect when construction was still in progress, the express terms of the city's contract with ODOT would obviously have been impaired because the bargained-for completion of the project would have been impossible. * * * The parties' contractual obligations would have been abrogated. It is difficult to imagine a more substantial impairment of the obligations of the contract than the one which would have resulted from this ordinance. [Emphasis added; citation omitted.]
Middletown, supra at 78.
As indicated infra, the second prong of the test requires a determination as to whether or not the prohibition of the contract clauses can be harmonized with the initiative power reserved to the electorate and the reasonable necessity of serving an important public purpose. As noted in Middletown, the "level of scrutiny of this ordinance will be high because of the severity of the impairment." Id. at 79.
In Middletown, one of the "major" reasons advanced for passage of the repealing ordinance was "citizen concern about traffic safety." Id. Traffic safety was also cited as a reason in the instant case. Although the City of Middletown suggested several measures to address the problem of traffic safety, the repealing legislation, "* * * which purported simply to abolish the road improvement project altogether, was neither a reasonable nor a necessary means of dealing with traffic safety concerns." Id. As is the situation before us, the Middletown repealing ordinance "* * * was, rather, the most drastic means of addressing the safety problems." Id.
Given the disposition of the traffic and construction concerns in Middletown, the other concerns cited by the committee here primarily the loss of certain aesthetic assets such as trees, cannot possibly justify abolishment of the entire project. Given the substantial impairment discussed above, the prohibition of the contract clauses cannot be harmonized with the initiative power of the electorate and the reasonable necessity to serve the important public purposes to be achieved on behalf of the city of London by this project.
As discussed above, Middletown provides comprehensive guidelines to determine whether, under circumstances such as those presented in the instant case, an initiative petition/repealing ordinance is an unconstitutional impairment of contractual obligations. Applying those guidelines to this case, we must conclude that the trial court did not err in concluding that the Initiative Petition/repealing ordinance is unconstitutional pursuant to Section 10, Article I of the United States Constitution and Section 28, Article II of the Ohio Constitution. Accordingly, the trial court properly determined that the city was entitled to judgment as a matter of law.
The second assignment of error is overruled.
By its third and final assignment of error, the committee argues that the trial court erred in granting injunctive relief. We disagree.
As a practical matter, the injunctive relief ordered by the trial court is the most expedient, if not only, mechanism by which the city can reactivate the project. Speaking to the issue of the damages, the Middletown court stated, at 76-77:
 In the instant case, contravening legislation (the initiative ordinance) was enacted which sought to prevent the parties to this contract from meeting their obligations by repealing the contract. There could be no remedy in damages for a breach of a contract which no longer existed. As explained by the Seventh Circuit in [E E Hauling, Inc. v. Forest Preserve Dist. Of DuPage County (C.A.7, 1980)]:
 "* * * [I]f a state or its subdivision passes a law and through enforcement of it prevents another party from fulfilling its obligation under the contract because the use of the ordinance precludes a damage remedy, the non-breaching party cannot be made whole. Instead, the law has impaired the obligation of the contract. Use of law normally will preclude a recovery of damages because the law will be a defense to a suit seeking damages * * *." Id. at 679.
 In the case before us, the voters of Middletown used their reserved power to pass legislation in an attempt to prevent the city from fulfilling its contract. Here, a law was used to impair contractual rights. This initiative ordinance went beyond a mere breach of contract because its passage precluded any remedy in damages. Instead, had it been given effect, the ordinance would have brought about an impairment of the obligations of the contract between the city and ODOT.
The trial court did not err in granting injunctive relief. Therefore, the third assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is hereby affirmed.
 _____________ TYACK, J.
BRYANT, P.J., and BROWN, J., concur.
[1] Pursuant to R.C. 5501.22, exclusive subject matter jurisdiction is vested in courts located in Franklin County in litigation wherein the director of ODOT is a named defendant. See GTE Wireless of the Midwest, Inc. v. Anderson Twp. (1999), 134 Ohio App.3d 352, discretionary appeal not allowed (1999), 87 Ohio St.3d 1429.
[2] The trial court issued a nunc pro tunc decision on December 8, 2000, "for the sole purpose of correcting several clerical errors" contained in the original December 5 decision.