CITY OF MIDDLETOWN, APPELLEE, *v.* FERGUSON, AUDITOR, ET AL.;
STICKLEN ET AL., APPELLANTS.

[Cite as Middletown *v.* Ferguson (1986), 25 Ohio St. 3d 71.]

(No. 85-996—Decided July 23, 1986.)

*Squire, Sanders & Dempsey, John R. Gall, C. Craig Woods;* and *Sheldon A. Strand,* law director, for appellee.

*Carl Morgenstern Co., L.P.A., Carl Morgenstern* and *Roger S. Gates,* for appellants.

*Per Curiam.* In this case the elected representatives of the citizens of Middletown, the city commissioners, carefully conceived a plan to widen and improve Manchester Road. The commissioners diligently and openly passed all necessary legislation to carry their plan to completion. Unfortunately, a significant number of citizens were opposed to the road improvement project. These citizens sought to halt the project by using their reserved initiative power. In this conflict between a city government and its citizens, we must decide whether the initiative ordinance passed by the Middletown voters unconstitutionally impaired the city's contractual obligations in the road improvement project.

We realize that initiative repeal of the necessary project-related legislation was the only course open to the citizens opposing the project.[1] Nevertheless, had this initiative been brought at an earlier time, before there was an executed contract, and before construction had begun, this controversy likely would not be before us today. As it is, however, we must conclude that this initiative ordinance impaired the obligations of the contract between the city and ODOT in violation of Section 10, Article I of the United States Constitution and was thus void as of its effective date.[2]

---

[1] Since the resolutions and ordinances relating to the Manchester Road project were passed as an emergency, the voters did not have the referendum option, but rather had to file an initiative petition in order to repeal the laws. See *Wiegand* v. *Ferguson* (1931), 124 Ohio St. 73.

[2] The initiative ordinance read in pertinent part as follows:

"An ordinance to repeal any and all legislation enacted by the City Commission of Middletown, Ohio with respect to the widening and improvement of Manchester Road from Breiel Boulevard east to the Butler/Warren County line including Resolution No. R81-03 and Ordinance Nos. 081-44 and 081-49 of the City of Middletown.

"Be it ordained by the people of Middletown, Ohio:

"*Section I.* That Resolution No. R81-03 and Ordinance Nos. 081-44 and 081-49 and, in addition, any and all further legislation not herein specifically designated by number but adopted by the City Commissioners of Middletown, Ohio and having reference to the widening and improvement of Manchester Road from Breiel Boulevard east to the Butler/Warren County line, be and hereby are, repealed.

"*Section II.* That any and all commitments of the City of Middletown, Ohio to widen and

Before we explain our reasons for this determination, we must first address the appellants' contention that the city has no standing to raise the issue of the constitutionality of the initiative ordinance. Appellants claim the city has no standing because its rights have not been adversely affected by the ordinance. Appellants argue that the city government is the servant of the people and derives its authority from its constituents who are incapable of unconstitutionally depriving themselves of any rights. Since the city government and the people are one, appellants reason, action by the voters cannot harm the city and thus the city has no "personal stake" in this controversy.

We believe that appellants have overlooked the fact that standing may also be conferred by statute. The city has brought a bond validation action pursuant to R.C. 133.71(B), which provides that such actions may be commenced by an issuer of bonds "for the purpose of obtaining an adjudication of its authority to issue the securities and the validity of the proceedings taken * * * in connection therewith * * *." Further, R.C. 133.72 requires that the petition for validation contain the ordinance, resolution or other proceeding authorizing the issuance of the securities and all other essential proceedings taken in connection therewith. Surely the city's ordinances of June 7, 1983 levying the special assessments and providing for the issuance of bonds in anticipation of the collection of the assessments were essential proceedings taken in connection with these securities. It is the validity of these proceedings which the city seeks to adjudicate. The bonds cannot be issued if, as appellants contend, the initiative ordinance repealed all necessary legislation relating to the levying and collection of assessments. Accordingly, the constitutionality of the initiative ordinance is vital to a determination of whether the city has authority to issue the bonds.

Standing does not flow from the common-law "personal stake" doctrine alone. As the United States Supreme Court has recognized, standing may also be conferred by a specific statutory grant of authority:

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged * * * a 'personal stake in the outcome of the controversy' [citation omitted] * * *. Where, however, * * * [a legislative authority] has * * * provided by statute for judicial review * * *, the inquiry as to standing must begin with a determination of whether the statute in question

improve Manchester Road from Breiel Boulevard east to the Butler/Warren County line be, and hereby are, repealed.

"*Section III.* That this Ordinance shall take effect and be in force from and after the earliest date allowed by law."

authorizes review at the behest of the plaintiff." *Sierra Club* v. *Morton* (1972), 405 U.S. 727, 731-732.

We think it clear that R.C. 133.71(B) authorizes judicial review, at the behest of the city, of the validity of all proceedings taken in connection with the bonds it proposes to issue and the city's authority to do so. We therefore hold that the city has standing in this case pursuant to a special statutory grant of authority.

We now address the city's contention that the initiative ordinance was void *ab initio* by reason of its unconstitutionality. Section 10, Article I mandates that "[n]o State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *." This prohibition reaches any form of legislative action, including direct action by the people. *Ross* v. *Oregon* (1913), 227 U.S. 150, 163. This point was well made by the Ninth Circuit Court of Appeals in *Continental Illinois Natl. Bank* v. *Washington* (1983), 696 F. 2d 692. In this case, Washington voters who were concerned about huge cost overruns in the construction of nuclear power plants passed Initiative 394. The initiative provided, *inter alia,* that bonds could not be issued to finance further construction unless authority for the issuance was first obtained through an election. The builder of several nuclear power plants was the Washington Public Power Supply System, a municipal corporation. The court held that the initiative impermissibly impaired the builder's obligations under Section 10, Article I, and stated:

"Once having granted certain powers to a municipal corporation, which in turn enters into binding contracts with third parties who have relied on the existence of those powers, the legislature *(or here, the electorate)* is not free to alter the corporation's ability to perform." (Emphasis added.) *Id.* at 700.

The Ninth Circuit's reasoning is equally applicable to the instant case, in which the city had entered into a binding contract with ODOT. Once the contract had been executed and performance had begun, the voters of the city of Middletown were not free to impair the city's contractual obligations on the contract in violation of Section 10, Article I.

Appellants contend, however, that no impairment of an obligation of a contract resulted from passage of the initiative ordinance. Rather, they argue, the ordinance merely operated as a repudiation of the contract and no constitutional claim was thereby stated. This contention is misplaced. The distinction between a breach of contract and an impairment of an obligation of a contract was succinctly stated in *E & E Hauling, Inc.* v. *Forest Preserve Dist. of DuPage County* (C.A. 7, 1980), 613 F. 2d 675, 678:

"Mere refusal to perform a contract by a state does not raise a constitutional issue, but when a state uses its *legislative authority* to impair a contract a constitutional claim is stated." (Emphasis added.) See, also, Hale, The Supreme Court and the Contract Clause (1944), 57 Harv. L. Rev. 852, 891.

In the instant case, contravening legislation (the initiative ordinance)

was enacted which sought to prevent the parties to this contract from meeting their obligations by repealing the contract. There could be no remedy in damages for a breach of a contract which no longer existed. As explained by the Seventh Circuit in *Forest Preserve Dist., supra*:

"* * * [I]f a state or its subdivision passes a law and through enforcement of it prevents another party from fulfilling its obligation under the contract because the use of the ordinance precludes a damage remedy, the non-breaching party cannot be made whole. Instead, the law has impaired the obligation of the contract. Use of law normally will preclude a recovery of damages because the law will be a defense to a suit seeking damages * * *." *Id.* at 679.

In the case before us, the voters of Middletown used their reserved power to pass legislation in an attempt to prevent the city from fulfilling its contract. Here, a *law* was used to impair contractual rights. This initiative ordinance went beyond a mere breach of contract because its passage precluded any remedy in damages. Instead, had it been given effect, the ordinance would have brought about an impairment of the obligations of the contract between the city and ODOT.

It must now be determined whether that impairment was unconstitutional. We begin with the recognition that "[a]lthough the Contract Clause appears literally to proscribe 'any' impairment, * * * 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.' " *United States Trust Co.* v. *New Jersey* (1977), 431 U.S. 1, 21 (quoting *Home Building & Loan Assn.* v. *Blaisdell* [1934], 290 U.S. 398, 428). The first step in our analysis is to ascertain whether, in fact, this initiative ordinance "operated as a *substantial* impairment of a contractual relationship." (Emphasis added.) *Allied Structural Steel Co.* v. *Spannaus* (1978), 438 U.S. 234, 244. If the impairment is severe, the level of scrutiny of the law will be greater, as a substantial impairment of the obligations of a contract is more likely to offend the Contract Clause. *Id.* at 245.

Two considerations in determining whether the impairment is substantial are pertinent to the instant case. The first is the extent to which reasonable expectations in the contract are disrupted. *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.* (1983), 459 U.S. 400, 411; *Allied Structural Steel Co., supra*, at 245-247; *United States Trust Co., supra*, at 31. Secondly, the United States Supreme Court has indicated that an impairment is especially severe where a party has relied on an obligation which is impaired by legislation, as when the legislation impairs the express terms of a contract. *Allied Structural Steel Co., supra*, at 246-247.

One of the effects of the initiative ordinance in the instant case was to repeal all legislation necessary for the city to levy assessments. The city urges that this amounted to substantial impairment. We agree.

The record demonstrates that the assessments were an integral part

of the road improvement project. The resolutions and ordinances relating to assessments had been passed at the time the city signed the construction contract with ODOT. It is well-settled that " 'laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. * * *' " *Blaisdell, supra,* at 429-430 (quoting *Von Hoffman* v. *Quincy* [1867], 71 U.S. [4 Wall.] 535, 550). Accord *Farmers & Merchants Bank of Monroe* v. *Federal Reserve Bank of Richmond* (1923), 262 U.S. 643, 660. As explained by the Supreme Court, "[t]his principle presumes that contracting parties adopt the terms of their bargain in reliance on the law in effect at the time the agreement is reached." *United States Trust Co., supra,* at 20, fn. 17. Accordingly, the city's construction contract with ODOT incorporated the assessment legislation.

From the inception of this project, the city intended to recoup its share of the project costs by issuing bonds in anticipation of the collection of assessments. The city passed this assessment legislation in order that its general revenues would not be depleted. The city undertook its contractual obligations on the premise that a specific source of revenue would be available by law to fund them. Passage of the initiative ordinance then simply repealed the legislation necessary to levy the assessments without even proposing an alternative source of funds from which to replenish lost general revenues. The city thus could not issue bonds in anticipation of the collection of assessments and could not recover its costs from the very source of funds upon which it had relied when entering the contract with ODOT. Such a result entirely frustrated the city's reasonable expectations and thus substantially impaired the city's contract with ODOT. See *Energy Reserves Group, Inc., supra,* at 411.[3]

The primary thrust of this initiative ordinance, however, was to halt construction of the road improvement. Had the initiative ordinance been given effect when construction was still in progress, the express terms of the city's contract with ODOT would obviously have been impaired because the bargained-for completion of the project would have been impossible. See *Allied Structural Steel Co., supra,* at 246-247. The parties' contractual obligations would have been abrogated. It is difficult to imagine a more substantial impairment of the obligations of the contract than the one which would have resulted from this ordinance.

---

[3] Our holding certainly does not mean that cities cannot explore new, unforeseen or alternative methods of raising revenue to replenish their general funds or retire bonds. It is essential that cities retain the flexibility to change sources of funding through subsequent legislative enactments, initiative or otherwise, so long as their contractual obligations are not impaired thereby.

However, once a city has committed itself to a particular method of raising revenue and has entered into a contract in reliance on that method, that source of funding may not be subsequently eliminated by the electorate in a manner which would impair the city's contractual obligations.

Our finding that this initiative ordinance substantially impaired the obligations of this contract is not the end of our analysis, however. The United States Supreme Court has been careful to consider the effect of the Contract Clause on the constitutional reservation of power to the states. As the court stated in *El Paso* v. *Simmons* (1965), 379 U.S. 497, 508, citing *Blaisdell, supra,* at 434-435:

" 'Not only are existing laws read into contracts in order to fix obligations between the parties, but the reservation of the essential attributes of sovereign power is also read into contracts as a postulate of the legal order. * * * This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.' "

In the context of the instant case then, we must attempt to harmonize the proscription of the Contract Clause with the important initiative powers reserved to the citizens of Middletown.

It has previously been determined that the initiative ordinance substantially impaired the obligations of the contract between the city and ODOT. The level of scrutiny of this ordinance will be high because of the severity of the impairment. *Allied Structural Steel Co., supra,* at 245. Our inquiry must now move to the justification for this impairment. A law substantially impairing the obligations of a contract "may be constitutional if it is reasonable and necessary to serve an important public purpose." *United States Trust Co., supra,* at 25. In *Blaisdell, supra,* the court upheld a law which did work an impairment because the law "was not for the mere advantage of particular individuals but for the protection of a basic interest of society." *Id.* at 445. The standard "when distilled to its essence is one of reasonableness * * *." *Cuyahoga Metro. Housing Auth.* v. *Cleveland* (N.D. Ohio 1972), 342 F. Supp. 250, 254.

An examination of the record shows that a major reason advanced for passage of this initiative ordinance was citizen concern about traffic safety. Another reason was opposition to assessments. The city, at public meetings with these citizens, suggested several concrete measures to meet these problems. This initiative ordinance, which purported simply to abolish the road improvement project altogether, was neither a reasonable nor a necessary means of dealing with traffic safety concerns. It was, rather, the most drastic means of addressing the safety problems. Further, this ordinance sought to prevent any assessments on the abutting property owners and instead transferred the burden of the project's costs to the city taxpayers as a whole. As such, the ordinance operated "to the mere advantage of particular individuals," the abutting property owners, appellants herein. This initiative ordinance "did not effect simply a temporary alteration of the contractual relationships of those within its coverage, but worked a severe, permanent, and immediate change in those relationships — irrevocably and retroactively." *Allied Structural Steel Co., supra,* at 250. Even given the importance of the reserved power of in-

itiative, there was not sufficient justification for this ordinance to survive challenge under the Contract Clause.[4]

Our task has been to determine the constitutionality of this initiative ordinance. Because the ordinance was unconstitutional at the time of its passage, it was void from its inception. The passage of time and subsequent performance of the contract cannot "cure" this constitutional defect, for an unconstitutional law must be treated as having no effect whatsoever from the date of its enactment. This fundamental proposition has been expressed as follows:

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County* (1886), 118 U.S. 425, 442. Accord *Ex Parte Siebold* (1879), 100 U.S. 371, 376; *Chicago, I. & L. Ry. Co.* v. *Hackett* (1913), 228 U.S. 559, 566.

Accordingly, we hold that this initiative ordinance was void *ab initio* and affirm the judgment of the court of appeals that the city has authority to issue its bonds and that all proceedings taken in connection therewith were lawful and valid.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

DOUGLAS and WRIGHT, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. I concur in the thorough and accurate analysis in the *per curiam* opinion of the rights of the parties. No member of this court will disagree, I am sure, that the people of a municipality have the right to exercise their state constitutional power to enact laws by the vote of the people through the initiative petition process as provided by Section 2, Article I of the Ohio Constitution, and im-

---

[4] Clearly, the right of the electorate to enact or repeal legislation by way of initiative petition is a precious and fundamental one. We only hold today that the initiative power must be exercised in a manner which does not interfere with the important protections embodied in Section 10, Article I of the United States Constitution prohibiting the impairment of the obligation of contracts. The words of this court, in a case decided ninety years ago, eloquently provide the foundation of our holding:

"But, it is urged, that a majority of those voting on the subject, voted in favor of the improvement of the roads in Athens county under this act, and that the majority should rule. The answer is, that the majority must rule inside of the provision of the constitution, and the act being unconstitutional, the vote could not make that lawful, which under the constitution is unlawful." *Hixon* v. *Burson* (1896), 54 Ohio St. 470, 486.

Similarly, in the instant case, the electorate had no constitutional right to enact unconstitutional legislation by way of initiative petition.

plemented by R.C. 731.28. The *per curiam* opinion, however, clearly and correctly concludes that the state constitutional right of the people to exercise legislative power by the initiative petition process must in this case be compatible with Section 10, Article I of the federal Constitution which mandates that no state shall pass any law impairing the obligation of contracts. Such mandated prohibition refers to any form of legislative action including direct action by the people through the initiative petition process. *Ross* v. *Oregon* (1913), 227 U.S. 150, 163. This painstaking analysis in the *per curiam* opinion, relying as it does on a principle set forth by the United States Supreme Court in *Ross,* compels the result we reach here in favor of the city of Middletown. The necessary and logical result should be plain enough even for a first-year law student to understand. See footnote 4 of the *per curiam* opinion herein.

However, one dissenting opinion here fails or refuses to comprehend this simple, correct and just analysis. It proceeds with typical populist-insulting vituperation, for which its author is practiced and proficient, italicizing the word "people" five times, to state that what the Chief Justice and today's majority "fail to understand is that the right to vote becomes meaningless when the government is left free to ignore election results." There can be only one ulterior purpose for such diatribe. This invective and pure balderdash is phrased in a most clever and grandstanding manner. Such dissenter hopes to have his judicial nonsense excerpted and editorialized in newspapers to heap adulation upon his pretended great reverence for the Ohio and United States Constitutions at the expense of other members of this court. Only a poison pen would write such a castigating dissent. This desperate grasp for undeserved attention adds nothing to the ship of Ohio jurisprudence but, instead, is an unsightly barnacle attached to it. It demonstrates an absence of judicial temperament exacerbated by judicial immaturity and inexperience.

Every member of this court has as much, and perhaps more, respect for "the sanctity of the ballot," "our democratic form of government," and "the sacred right to vote" as does the acerbic dissenter. Some of us developed this reverence for the sanctity of the ballot, for the First Amendment to the United States Constitution, and for Section 2, Article I of the Ohio Constitution, long before this distempered, dyspeptic dissenting justice became a lawyer.

DOUGLAS, J., dissenting. Between May 1977 and June 1981, the city commission enacted various measures to widen Manchester Road. Construction began sometime after July 1981. In November 1981, the people of Middletown passed the following initiative ordinance by a vote of 5,230 (60.6 percent) to 3,406 (39.4 percent):

"An ordinance to repeal any and all legislation enacted by the City Commission of Middletown, Ohio with respect to the widening and improvement of Manchester Road * * *

"* * *

"*Section I.* That Resolution No. R81-03 and Ordinance Nos. 081-44 and 081-49 and, in addition, any and all further legislation not herein specifically designated by number but adopted by the City Commissioners of Middletown, Ohio and having reference to the widening and improvement of Manchester Road * * * be and hereby are, repealed.

"*Section II.* That any and all commitments of the City of Middletown, Ohio to widen and improve Manchester Road * * * be, and hereby are, repealed.

"*Section III.* That this Ordinance shall take effect and be in force from and after the earliest date allowed by law."

The initiative ordinance took effect on November 10, 1981 and the parties stipulated that almost sixty percent of the construction work had been completed by that date. In July 1982, the project was completed. On June 7, 1983, the city commission adopted legislation authorizing the levying of special assessments, and providing for the issuance of bonds to pay for the city's portion of the Manchester Road construction costs.

The First Amendment to the United States Constitution states, "Congress shall make no law respecting * * * the right of the people * * * to petition the government for a redress of grievances."[5] This right is "* * * among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers of America* v. *Illinois State Bar Assn.* (1967), 389 U.S. 217, 222. In Ohio, this important right is reinforced by Section 2, Article I of the Ohio Constitution. It states:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary * * *."

One manner by which the people can exercise their First Amendment and Section 2, Article I powers is through the election process. Consistent with this philosophy, the General Assembly enacted R.C. 731.28. It states that ordinances providing for the exercise of certain governmental powers may be proposed by initiative petition, and that a properly proposed ordinance shall be submitted to the people for a vote.

The Supreme Court has testified to the fundamental character of the right to vote:

"No right is more precious in a free country than that of having a voice in the election * * * [process]. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry* v. *Sanders* (1964), 376 U.S. 1, 17.

A number of commentators have echoed this sentiment. Just recently, for instance, Chief Justice Celebrezze properly labeled the right to vote as "basic and fundamental." *State, ex rel. Keefe,* v. *Eyrich* (1986), 22 Ohio St.

---

[5] The Supreme Court has held this provision applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. See, *e.g., Hague* v. *Commt. for Indus. Organization* (1939), 307 U.S. 496.

3d 164, 179 (Celebrezze, C.J., dissenting).[6] I would respectfully suggest that the right to vote becomes meaningless when the government is left free to ignore election results.

The *people* of Middletown have exercised their "basic and fundamental" right to express their political preference in a free and honest election. Now that the *people* have expressed themselves, their choice should be honored. The majority's decision to ignore the *people's* choice defiles the sanctity of the ballot and is contrary to our democratic form of government.

The court should honor the *people's* decision. If contracts are breached as the result of that decision, any injured parties can recover their damages through an appropriate lawsuit.

The majority of this court, in the name of constitutional adjudication, has constructed serious obstacles between the *people,* their sacred right to vote and their right to have their votes honored.

WRIGHT, J., dissenting. While I agree that the right of the people to petition the government for a redress of grievances and the right to vote are among the most precious of liberties safeguarded by the Bill of Rights and the Ohio Constitution, the record in this case demonstrates beyond any doubt that the issues raised in this case are moot. It is axiomatic that the exercise of judicial power is limited to actual "justiciable matters." (Section 4, Article IV, Constitution.) We are precluded by law from adjudicating hypothetical and speculative questions; the dispute must consist of specific adverse claims based upon present rather than speculative facts.[7] Accordingly, a court should not decide a question that by a change in circumstances has become moot.

The controversy sought to be raised by the city regarding the impairment of contract has been rendered moot by the full performance of the contract on which the city bases its contention. On November 10, 1981, when the initiative ordinance went into effect, it is undisputed that the construction project to improve and widen Manchester Road was approximately sixty percent completed. To preserve its cause of action, the city should have immediately filed a declaratory judgment action to determine the constitutionality of the initiative ordinance. Instead, the city brought its complaint after it had already paid for the completion of the construction work. None of the city's obligations nor any of the obligations of the

---

[6] In *State, ex rel. Keefe,* the court upheld a provision of Ohio's Modern Courts Amendment which was adopted by Ohio's voters in 1968.

[7] See *United States* v. *Raines* (1960), 362 U.S. 17; *Alabama Power Co.* v. *Ickes* (1938), 302 U.S. 464; *Hicklin* v. *Coney* (1933), 290 U.S. 169; *Bandini Petroleum Co.* v. *Superior Court* (1931), 284 U.S. 8; *Gulf Publishing Co.* v. *Lee* (C.A. 5, 1982), 679 F. 2d 44; *Garden State Bar Assn.* v. *Middlesex County Ethics Commt.* (C.A. 3, 1981), 651 F. 2d 154; *Stratman* v. *Watt* (C.A. 9, 1981), 656 F. 2d 1321; *Sannon* v. *United States* (C.A. 5, 1980), 631 F. 2d 1247.

Ohio Department of Transportation under the construction contract was in fact impaired. The city has failed to allege that any specific individual has been denied any rights granted under the contract as a result of the initiative ordinance. To the extent that a justiciable controversy may have existed while the contract was in effect, the record reveals no individual in this litigation who suffered injury as a result of the adopted ordinance and, therefore, the city has no standing to continue litigation on this issue. I would affirm the trial court's finding that the city was not impaired in any of its obligations and dismiss this case as moot.

Accordingly, I dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

