OHIO VALLEY ASSOCIATED BUILDERS AND CONTRACTORS,
Appellant and Cross–Appellee,

v.

KUEMPEL, Appellee and Cross–Appellant.

[Cite as *Ohio Valley Associated Builders & Contrs. v. DeBra–Kuempel*, 192 Ohio App.3d 504, 2011-Ohio-756.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 24138.

Decided Feb. 18, 2011.

Jill A. May, Bradley C. Smith, and Brock A. Schoenlein, for appellant and cross-appellee.

Luther L. Liggett Jr., and Matthew T. Anderson, for appellee and cross-appellant.

FROELICH, Judge.

{¶ 1} Ohio Valley Associated Builders and Contractors ("OVABC") appeals from the trial court's entry of summary judgment against it due to a lack of standing. In a cross-appeal, DeBra–Kuempel ("DeBra") contends that the trial court erred in denying its motion for attorney fees under R.C. 4115.16 and Civ.R. 11.

{¶ 2} The record reflects that OVABC is an association of builders and contractors. In October 2009, it filed an administrative complaint against DeBra with the Ohio Department of Commerce, alleging that DeBra had violated Ohio's prevailing-wage law. The complaint involved an HVAC contract that DeBra had been awarded as part of a public-improvement project for Wright State University. The project is identified by the parties as the "Wright State University LAR/Cage Wash/Surgery Project." After 60 days passed without a final determination by the Ohio Department of Commerce, OVABC filed the present action in the trial court. DeBra later moved for summary judgment, arguing that OVABC lacked standing because (1) none of OVABC's members had bid against DeBra for the HVAC contract, and (2) neither OVABC nor any of its members had suffered any damages. DeBra also moved for attorney fees.

{¶ 3} In June 2010, the trial court filed a decision, order, and entry finding that OVABC was not an "interested party" with standing to sue because none of its members had bid against DeBra for the HVAC contract. Although two OVABC members had bid on contracts related to other portions of the public-improvement project, the trial court held that this fact did not give OVABC standing to pursue a prevailing-wage action against DeBra. In light of that determination, the trial court declined to decide whether OVABC also lacked standing because allegedly neither it nor any of its members had suffered any damages as a result of any alleged violations by DeBra. Finally, the trial court held that DeBra was not entitled to attorney fees under R.C. 4115.16 and Civ.R. 11. This timely appeal and cross-appeal followed.

{¶ 4} In its sole assignment of error, OVABC contends that the trial court erred in finding that it lacked standing as an "interested party" to file a statutory prevailing-wage action against DeBra. The issue presented by OVABC's appeal is whether it must have a member who had bid directly against DeBra on the same contract to have standing to pursue its prevailing-wage action. OVABC contends that standing exists because two of its members, Ohio Electrical Services and C & N Industrial, bid on other contracts, namely the electrical and lead contracts, within the project, even though they did not bid against DeBra for the HVAC contract. Resolution of this issue turns on R.C. 4115.16 and R.C. 4115.03(F).

{¶ 5} R.C. 4115.16 gives an "interested party" the ability to file an administrative complaint with the Ohio Department of Commerce. If no ruling is made within 60 days, the statute authorizes the interested party to file suit in common pleas court. The phrase "interested party" is defined in R.C. 4115.03(F) as follows:

{¶ 6} "(F) 'Interested party,' with respect to a particular public improvement, means:

{¶ 7} "(1) Any person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement;

{¶ 8} "(2) Any person acting as a subcontractor of a person mentioned in division (F)(1) of this section;

{¶ 9} "(3) Any bona fide organization of labor which has as members or is authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees;

{¶ 10} "(4) Any association having as members any of the persons mentioned in division (F)(1) or (2) of this section."

{¶ 11} OVABC claims that it qualifies as an interested party under R.C. 4115.03(F)(4) because it is an association that has members who fit within the scope of R.C. 4115.03(F)(1). In particular, it contends that two of its members bid for "a contract" that was part of "the public improvement" at Wright State University. In ruling otherwise, the trial court relied primarily on *Ohio Valley Associated Builders & Contrs. v. York* (Dec. 16, 2009), Butler C.P. No. CV2009-01-0303, a case directly on point. Adopting the language and reasoning of *York*, the trial court stated:

{¶ 12} " 'OVABC would have this court allow an association having a member that submits a bid on any aspect of a public construction contract to have standing to challenge any contract awarded to another entity for any other work, even if, as here, that other work is unrelated to what the member bid on. This court cannot countenance that interpretation of R.C. 4115.03(F). Such an interpretation is contrary to basic principles of standing.' "

{¶ 13} The trial court then agreed with *York* that the word "contract" in R.C. 4115.03(F)(1) means "the contract at issue" (i.e., the specific contract awarded to the defendant for HVAC from which the alleged prevailing-wage violation arose). The court in *York* also read the phrase "public improvement" in R.C. 4115.03(F) as meaning "the specific improvement encompassed by that contract." *York* declined to read "public improvement" in "the broadest sense possible, i.e. the entire construction project, especially when doing so would contradict general principles of standing."

{¶ 14} In its opening appellate brief, OVABC cites several cases that it believes undermine the trial court's analysis in both *York* and the present case. In response, DeBra argues that those cases are distinguishable and that *York* was decided correctly. After the opening round of briefing, however, two Ohio appellate districts filed opinions addressing the precise issue before us.

{¶ 15} In *Ohio Valley Associated Builders & Contrs. v. Indus. Power Sys., Inc.*, 190 Ohio App.3d 273, 2010-Ohio-4930, 941 N.E.2d 849, the Sixth District Court of Appeals first rejected the proposition that traditional, common-law standing principles play any role in determining standing under R.C. 4115.03. The Sixth District reasoned that the statute conferred standing on any person or entity that met the definition of an "interested party," without regard to whether such person or entity had a "personal stake" in the controversy under common-law principles. The Sixth District then rejected an argument that the phrase "a contract" in R.C. 4115.03(F)(1) was intended to limit "the definition of an interested party to a person who has submitted a bid on the particular contract from which the alleged prevailing-wage violation stems." Finally, the Sixth District rejected the proposition that OVABC lacked standing because it was not a labor union. The appellate court found OVABC's nonunion status irrelevant, as

it did not seek standing under R.C. 4115.03(F)(3), which pertains to labor unions. Instead, OVABC sought standing under R.C. 4115.03(F)(4), which grants interested-party standing to an association when its membership fits within R.C. 4115.03(F)(1).

{¶ 16} In the second case, *Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 192 Ohio App.3d 29, 2011-Ohio-160, 947 N.E.2d 1261, the Twelfth District Court of Appeals (which would be the appellate district to review *York*) rejected an argument that the word "contract" in R.C. 4115.03(F)(1) means "the contract at issue" and that the phrase "the public improvement" means "the specific improvement encompassed by that contract." The Twelfth District concluded that such a reading of the statute was inconsistent with precedent, contrary to the purpose of prevailing-wage law, and contrary to the statute's plain language. Like the Sixth District, the Twelfth District also determined that traditional, common-law standing principles play no role in determining whether statutory standing exists under R.C. 4115.03(F).

{¶ 17} Unlike the unanimous Sixth District decision, the Twelfth District's ruling included a dissent. As the Butler County Common Pleas Court had in *York*, the dissenting judge "reject[ed] an interpretation of R.C. 4115.03(F) that grants standing to *any* association having a member that bid on *any* part of a public improvement project to challenge an entirely different contract within that project." The dissenting judge reasoned that "the General Assembly intended to afford 'interested party' standing under R.C. 4115.03(F) to a narrower class of litigants, namely, parties that bid on the same contract."

{¶ 18} Having reviewed the cases cited by the parties, as well as the recent rulings by the Sixth and Twelfth Districts, we hold that OVABC qualifies as an interested party under R.C. 4115.03(F)(4) and, therefore, has standing. We reach this conclusion for at least five reasons. First, on its face, the language of R.C. 4115.03(F) supports it. As set forth above, the statute grants an association standing if it has any members who submit "a bid for the purpose of securing the award of *a contract* for construction of *the public improvement.*" (Emphasis added.) The phrase "public improvement" is defined in R.C. 4115.03(C) to include "all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof."

{¶ 19} This definition suggests that "public improvement" encompasses an entire project, whether it be the construction of a building or some other public work. It follows that a particular public improvement might involve separate contracts for its various components. In this context, we believe that the most

natural reading of R.C. 4115.03(F)(1) is that an association must have a member who has bid on *any* contract ("a contract") that is part of the project as a whole ("the public improvement"). See, e.g., *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶ 64 (O'Donnell, J., concurring in part and dissenting in part) (noting that "a" "is an indefinite article often used in the sense of 'any' and applied to more than one individual object; whereas 'the' is an article which particularizes the subject spoken of").

{¶ 20} Second, our reading of R.C. 4115.03(F)(1) is consistent with the Sixth and Twelfth Districts' recognition that " '[c]ourts have construed the definition of an interested party broadly to further the purposes of the prevailing-wage law.' " *Rapier*, 192 Ohio App.3d 29, 2011-Ohio-160, 947 N.E.2d 1261, at ¶ 18, quoting *Internatl. Assn. of Bridge, Structural, Ornamental & Reinforcing Iron Workers, Local 372, AFL–CIO v. Sunesis Constr. Co.*, 183 Ohio App.3d 438, 2009-Ohio-3729, 917 N.E.2d 343, ¶ 5; *Indus. Power Sys.*, 190 Ohio App.3d 273, 2010-Ohio-4930, 941 N.E.2d 849, at ¶ 15.

{¶ 21} Third, as both the Sixth and Twelfth Districts recognized, our reading of R.C. 4115.03(F)(1) is consistent with the legislative intent of the prevailing-wage law, which is " ' "to provide a comprehensive, uniform framework for, [inter alia,] worker rights and remedies vis-a-vis private contractors, subcontractors and materialmen engaged in the construction of public improvements" ' " and " ' "to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." ' " *Rapier* at ¶ 12, quoting *Indus. Power Sys.*, 190 Ohio App.3d 273, 2010-Ohio-4930, 941 N.E.2d 849, at ¶ 14, quoting *Bergman v. Monarch Constr. Co.*, 124 Ohio St.3d 534, 2010-Ohio-622, 925 N.E.2d 116, ¶ 10, quoting *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 23 O.O.3d 145, 431 N.E.2d 311.

■■ {¶ 22} Fourth, we agree with the Sixth and Twelfth Districts that common-law standing requirements, such as establishing a "personal stake" in a case, do not apply when the issue is statutory standing under R.C. 4115.03(F). " 'Standing does not flow from the common-law "personal stake" doctrine alone.' " *Indus. Power Sys.* at ¶ 21, quoting *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75, 25 OBR 125, 495 N.E.2d 380. It also may be conferred by a specific statutory grant of authority. Id. "By enacting R.C. 4115.16(B), the Ohio legislature conferred a specific statutory grant of authority for an 'interested party,' as defined in R.C. 4115.03(F), to file a prevailing-wage action in the common pleas court in the event the commerce director fails to rule on the administrative complaint within sixty (60) days." Id. "Therefore, the only issue is whether [OVABC] is an interested party as defined in R.C. 4115.03(F), common-law-standing notwithstanding." Id. "To incorporate common-law-standing principles

when the legislature has specifically authorized a party to bring suit is simply inappropriate." Id.

{¶ 23} Fifth, our reading of R.C. 4115.03(F)(1) is consistent with the way the phrase "public improvement" is treated elsewhere in Ohio prevailing-wage law. For example, "[i]n order for prevailing-wage law to apply to a given public improvement the cost of the construction must pass a threshold level[.]" *W. Unity ex rel. Beltz v. Merillat,* Williams App. No. WM–03–016, 2004-Ohio-2682, 2004 WL 1171179, ¶ 22. Ohio Adm.Code. 4101:9–4–17 identifies how the cost of a public improvement is to be computed. It provides:

{¶ 24} "(C) A public authority may not subdivide a project into component parts or projects of less than the threshold unless such projects under the threshold are conceptually separate and unrelated to each other, or encompass independent and unrelated needs of the public authority. Phases may be considered as separate projects only where the public authority has proposed construction of the project in separate and distinct phases, the proposal to construct in phases is based upon lack of adequate funding necessary to award the contract as a whole, and a period of six months or longer of construction inactivity will occur between each phase. *A single project which exceeds the fifteen-thousand-dollar limit as set forth in this rule shall constitute construction of a public improvement regardless of how many separate contracts are included within the project.*" (Emphasis added.)[1]

{¶ 25} The foregoing language makes clear that each individual contract does not pertain to its own separate "public improvement." Rather, absent special circumstances, "the public improvement" constitutes the project as a whole even though it may involve separate contracts for its component parts. This further supports our conclusion that OVABC has standing under R.C. 4115.03(F) because two of its members bid on "a contract" for "the public improvement" at Wright State University.

{¶ 26} Finally, we reject DeBra's argument that OVABC cannot pursue its lawsuit because it does not meet the requirements of Civ.R. 17(A), which requires an action to "be prosecuted in the name of the real party in interest." The phrase "real party in interest" means " 'one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is *directly* benefitted or injured by the outcome of the case.' " (Emphasis sic.) *Countrywide Home Loans, Inc. v. Swayne,* Greene App. No. 2009 CA 65,

---

1. In *W. Unity ex rel. Beltz v. Merillat,* Williams App. No. WM–03–016, 2004-Ohio-2682, 2004 WL 1171179, ¶ 23, the court recognized that the purpose of Ohio Adm.Code 4101:9–4–17 is to "amplify" R.C. 4115.03, which is the statute at issue here.

2010-Ohio-3903, 2010 WL 3292363, ¶ 28, quoting *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 20 OBR 210, 485 N.E.2d 701.

{¶ 27} Common-law standing, which requires a plaintiff to have a "personal stake" in a lawsuit, is similar to Civ.R. 17(A)'s real-party-in-interest requirement. Indeed, one who has standing by possessing a "personal stake" in a lawsuit undoubtedly also has a "real interest in the subject matter of the litigation." Thus, courts often conflate common-law standing and Civ.R. 17, treating them as one and the same. See, e.g., *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 ("Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action"); *Sutton Funding, L.L.C. v. Herres,* 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574, ¶ 38; *Portfolio Recovery Assoc., L.L.C. v. Thacker,* Clark App. No. 2008 CA 119, 2009-Ohio-4406, 2009 WL 2675665, ¶ 14.

{¶ 28} As set forth above, however, the present case involves statutory standing, not common-law standing. Ohio's prevailing-wage law expressly authorizes "interested parties" to file an enforcement action in common pleas court. Unlike common-law standing, it does not follow that a party granted statutory standing will be "directly benefitted or injured by the outcome of the case," as required by Civ.R. 17(A). The present case illustrates the distinction. Although OVABC qualifies as an interested party and, thus, has statutory standing, the record does not reflect that OVABC itself, as an association, directly will benefit or suffer from the outcome of the case.

{¶ 29} Despite this fact, Civ.R. 17(A) does not prevent OVABC from pursuing its lawsuit. Notably, Civ.R. 17(A) recognizes that a party granted statutory standing may not meet the definition of a real party in interest. Thus, it creates an exception, providing that "a party authorized by statute" may sue in its name "without joining the party for whose benefit the action is brought." Cf. *Celebrezze v. Hughes* (1985), 18 Ohio St.3d 71, 74, 18 OBR 102, 479 N.E.2d 886 ("Civ.R.17(A) provides *inter alia* that 'a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought.' * * * Under the foregoing statutes, the Attorney General is just such a party and may bring an action in his name pursuant to Civ.R. 17(A) on behalf of consumers"). As one court has recognized, "[t]he question of whether [a] plaintiff is the 'real party in interest' is overshadowed by the specific wording of [a] statute" defining who has standing to bring an action. *Oakbrook Realty Corp. v. Harris* (April 30, 1991), Franklin App. No. 89AP–819, 1991 WL 70146. A person or entity granted statutory standing, "in effect, bec[omes] the 'real party in interest.' " Id.; see also *Doran v. Northmont Bd. of Edn.,* 153 Ohio App.3d 499, 2003-Ohio-4084, 794 N.E.2d 760, ¶ 20 ("Doran has

standing pursuant to the statute itself, which provides that '[a]ny person may bring an action to enforce this section * * * within two years after the date of the alleged violation or threatened violation.' We do not believe that anything further is required"). Therefore, we see no conflict between OVABC's statutory standing and Civ.R. 17(A). We note, too, that applying Civ.R. 17(A) to deny OVABC standing would defeat the apparent reason for the statute: to provide standing to an association that *does not* possess common-law standing or a direct interest in the outcome of the case.

{¶ 30} Based on the reasoning set forth above, we conclude that the trial court erred in finding that OVABC lacked interested-party standing under R.C. 4115.03(F).[2] Accordingly, OVABC's assignment of error is sustained.

■ {¶ 31} DeBra's cross appeal contends that the trial court erred in denying its request for attorney fees under R.C. 4115.16 and Civ.R. 11. In support of its ruling, the trial court reasoned:

{¶ 32} "The Court does not find Defendant's argument well-taken that it should be granted attorney's fees pursuant to O.R.C. 4115.16(D). The Court did not find that no violation of the Prevailing Wage law occurred. Further, the Court cannot say that Plaintiff's filing of the Complaint was unreasonable or without foundation. To this Court's knowledge, neither the Ohio Supreme Court nor the Second District Court of Appeals has made a ruling as to the exact issue before this Court on standing. Further, the Court did not rule on the merits of Plaintiff's wage violation claim.

{¶ 33} "The Court does not find that Defendant is entitled to attorney's fees under Ohio Civil Rule 11. The Court does not find that the filing of Plaintiff's Complaint was a willful violation of Civil Rule 11, or that it was frivolous."

{¶ 34} Our review of DeBra's appellate brief reveals two possible grounds for awarding attorney fees: (1) OVABC's standing claim lacks even arguable merit, and (2) OVABC's allegation of a prevailing-wage violation lacks any factual or evidentiary support. In light of our analysis above, however, DeBra plainly is not entitled to attorney fees based on OVABC's lack of standing. As for the merits of OVABC's allegations, the case has not proceeded far enough for us to determine whether they are wholly baseless. As the trial court pointed out, its ruling did not address the merits of OVABC's allegations. Instead, it dismissed the complaint for lack of standing. Because the merits of OVABC's allegations have not yet been examined below, we cannot say that the trial court erred in

---

**2.** DeBra separately argues that no standing exists because neither OVABC nor any of its members suffered any damages. We need not address this issue further because the trial court declined to decide it below. As set forth above, the trial court found the issue moot in light of its determination that OVABC lacked standing under R.C. 4115.03(F).

denying DeBra's motion for attorney fees. Accordingly, DeBra's assignment of error on cross appeal is overruled.

{¶ 35} The judgment of the Montgomery County Common Pleas Court is reversed and remanded insofar as it dismissed OVABC's complaint for lack of standing. The trial court's judgment is affirmed with respect to the denial of DeBra's motion for attorney fees.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FAIN and DONOVAN, JJ., concur.