[Cite as *Cincinnati v. Twang, L.L.C.*, 2021-Ohio-4387.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NO. C-200369 |
| | | TRIAL NO. A-1803297 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| TWANG, LLC, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 15, 2021

*Andrew Garth*, City Solicitor, *Jonathan Roach* and *Jacklyn Gonzales Martin*, Assistant City Solicitors, for Plaintiff-Appellee,

*Statman, Harris & Eyrich, LLC*, and *William B. Fecher*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Appellant Twang, LLC, brings this appeal from several orders issued by the trial court in a lawsuit initiated by appellee the city of Cincinnati that relates to a property Twang owns but has failed to adequately maintain. In part, Twang challenges a judgment of $25,212 for unpaid fees and civil fines arising from Cincinnati Municipal Code violations at the property. For the reasons that follow, we affirm.

Background Facts and Procedure

{¶2} The property is located at 819 Elm Street in a historic district in downtown Cincinnati. Twang has owned the property since 2014. The property includes a multistory building with residential and commercial spaces.

{¶3} In August 2016, the city of Cincinnati, through its building department, found the conditions of Twang's building in violation of the city's building code and ordered Twang to barricade the building, keep it vacant, and obtain a Vacated Building Maintenance License ("VBML") in accordance with the city's VBML program.

{¶4} Under the city's VBML program, the owner must pay a licensing fee and bring the property into compliance with minimal safety and structural integrity standards ("VBML standards") for as long as the building is kept vacant. *See* Cincinnati Municipal Code 1101.129 and 1101.77.3. The owner must renew the license each year the building remains vacant, and the renewal fees increase based on the number of years the property remains vacant. The failure to pay the VBML fee or maintain the building consistent with VBML standards can result in late fees, civil citations, and criminal citations. *See, e.g.,* Cincinnati Municipal Code 1101.79.4 and 1101.129.3.

{¶5} Twang did not administratively appeal the August 2016 order. Additionally, Twang failed to obtain a VBML and bring the vacant and blighted property into compliance with VBML standards.

{¶6} The city subsequently issued six civil citations against Twang over an 11-month period beginning in April 2017 and ending in March 2018 for failing to comply with the August 2016 order. Those citations assessed fines in accordance with the provisions of the city's municipal code. Twang did not administratively appeal those citations or pay them. Twang's continued delinquency resulted in an increase in the fees and fines per the schedules set forth in the city's ordinances.

{¶7} After almost two years of noncompliance by Twang, the city filed this civil action in July 2018. The city's amended complaint set forth multiple claims. The causes of action included a statutory public-nuisance claim under R.C. 3767.41 that sought rehabilitation of the building, by a receiver if necessary, and collection claims against Twang for the unpaid fees and fines arising from the Cincinnati Municipal Code violations at the property.

{¶8} Twang answered and requested in writing that the building be demolished. In September 2018, Twang applied for a certificate of noncompliance from the city's Historic Conservation Board to demolish the building. After the Historic Conservation Board denied Twang's request, Twang filed a counterclaim in this action. Citing R.C. 3767.41(E), Twang requested a declaration that its own property was a public nuisance and an order from the court to demolish the building. Twang also moved for partial summary judgment on this counterclaim, arguing in essence that the trial court did not have to hold a hearing to determine that the building was a public nuisance in light of the position of the parties.

{¶9} The city moved to dismiss Twang's counterclaim and opposed Twang's request for summary judgment on the ground that Twang lacked standing. The city also filed a motion seeking partial summary judgment on its collection claims for the unpaid fees and fines relating to the property.

{¶10} Twang opposed the city's motion for partial summary judgment on the collection claims, but did not rebut the city's evidence demonstrating that Twang owed the fees and fines and had failed to pay them. Instead, Twang argued the city could not obtain a judgment for the amounts sought without first establishing that the claimed fees and fines were not excessive under the Excessive Fines Clause of the United States Constitution.

{¶11} The city addressed the Excessive Fines Clause argument in its reply, contending Twang could not first inject the issue into the litigation in response to the city's motion for partial summary judgment. Further, the city contended Twang's assertion that the city carried the burden with respect to the Excessive Fines Clause issue was flawed.

{¶12} The trial court subsequently dismissed Twang's counterclaim, denied Twang's motion for partial summary judgment, granted the city's motion for partial summary judgment on its claims for unpaid fees and fines, and certified that its judgment was final with respect to those orders. The city then dismissed its remaining claims against Twang. Twang now appeals, asserting four assignments of error for our review.

The Assignments of Error

{¶13} In its first assignment of error, Twang contends the trial court erred "in concluding that Twang lacked standing to pursue its demolition request under R.C. 3767.41(E)." The essence of Twang's argument is that the trial court erred by

4

dismissing its counterclaim, and we recast the assignment of error to reflect this argument.

**{¶14}** According to Twang, the trial court misinterpreted R.C. 3767.41 when it concluded that the statute did not afford it standing to assert a counterclaim seeking demolition of the building. Before an Ohio court will consider the merits of a legal claim, "the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27. This case involves statutory standing, not common-law standing. Standing to sue may be conferred by a "specific statutory grant of authority." *City of Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495 N.E.2d 380 (1986). That statute must authorize the invocation of the judicial process by the plaintiff. *See id.* at 76.

**{¶15}** The interpretation of R.C. 3767.41 and whether Twang established standing are questions of law that we review de novo. *See, e.g., Ohioans For Concealed Carry, Inc. v. City of Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, 172 N.E.3d 935, ¶ 12; *Satterfield v. Ameritech Mobile Communications, Inc.*, 155 Ohio St.3d 463, 2018-Ohio-5023, 122 N.E.2d 144, ¶ 16. Our main objective when interpreting a statute is to determine and give effect to the legislative intent, as ascertained primarily from the language of the statute. *Satterfield* at ¶ 16-17. The statute at issue is clear on its face and does not support Twang's argument on standing.

**{¶16}** R.C. 3767.41 contains provisions enabling the enforcement of nuisance-abatement laws with respect to certain buildings or portions of buildings alleged to be a "public nuisance." Importantly, a "civil action" may be brought by a

"municipal corporation or township in which the building involved is located," "any neighbor or tenant," or certain nonprofit corporations dedicated to improving housing conditions in the area. R.C. 3767.41(B)(1). The "complaint" in that civil action must be served on the "owner of the building and all other interested parties." R.C. 3767.41(B)(2)(a). "Interested party" is defined as "any owner, mortgagee, lienholder, tenant, or person that possesses an interest of record in any property that becomes subject to the jurisdiction of the court pursuant to this section, and any applicant for the appointment of a receiver pursuant to this section." R.C. 3767.41(A)(4).

{¶17} After a mandatory hearing in the "civil action described in division (B)(1)," and a court determination that a public nuisance exists, the court may abate the nuisance in various ways. The party commencing the civil action described in division (B)(1) may be afforded relief from that public nuisance by a judicial order, in accordance with the request in the complaint.

{¶18} For instance, the court may issue an injunction requiring the owner to abate the public nuisance in 30 days. R.C. 3767.41(C)(1). Alternatively, if the owner of the building has been afforded the opportunity to abate the public nuisance, and has refused or failed to do so, the court shall afford the abatement opportunity to other interested parties associated with the property. R.C. 3767.41(C)(2). Those interested parties must provide "a viable financial and construction plan" for the rehabilitation of the building and post security. R.C. 3767.41(C)(2). Finally, if necessary, the court may appoint a receiver to take possession and control of the building and abate the public nuisance. R.C. 3767.41(C)(2) and (3).

{¶19} The statute further specifies that "[p]rior to ordering any work to be undertaken, or the furnishing of any materials, to abate a public nuisance under this section, the judge in a civil action described in division (B)(1) of this section shall review the submitted financial and construction plan for the rehabilitation of the building involved and * * * shall approve that plan" if it specifies certain finance-related information, including that "[i]f repair and rehabilitation of the building are found not to be feasible, the cost of demolition of the building or of the portions of the building that constitute the public nuisance." R.C. 3767.41(D)(1)-(4).

{¶20} R.C. 3767.41(E), cited by Twang in its counterclaim, provides:

Upon the written request of any of the interested parties to have a building, or portions of a building, that constitute a public nuisance demolished because repair and rehabilitation of the building are found not to be feasible, the judge may order the demolition.

{¶21} Twang recognizes that it lacks standing to bring the civil action described in R.C. 3767.41(B)(1). Twang's argument, as we understand it, is that the "written request" language of R.C. 3767.41(E) evinces a legislative intent to afford a building owner standing to bring a statutory public-nuisance action seeking to declare its property a nuisance and obtain an order of demolition. Thus, Twang contends it has statutory standing to file the counterclaim.

{¶22} Twang seemingly equates its right as an "interested party" to file a "written request" for demolition for a building or portion of a building with statutory standing to obtain judicial resolution of whether its building is a public nuisance. For instance, in support of its position, Twang cites *Ohio Valley Associated Builders and Contrs. v. Kuempel*, 192 Ohio App.3d 504, 2011-Ohio-756, 949 N.E.2d 582 (2d

7

Dist.). In that case, a builders and contractors association brought an action against a bidder alleging the bidder had violated the state's prevailing-wage law. The court of common pleas granted summary judgment against the association due to a lack of standing. The court of appeals reversed, determining in part that the association had statutory standing to bring a prevailing-wage-law claim even though it lacked common-law standing. *Id.* at ¶ 22. The relevant statute, however, actually authorized the "fil[ing] [of] a complaint in the court of common pleas." R.C. 4115.16(B).

{¶23} We concur with the trial court's determination in this case that R.C. 3767.41(E) only affords an "interested part[y]" the right to make a "written request" for demolition at a certain time during the "civil action" referenced in R.C. 3767.41(B)(1). R.C. 3767.41(E) does not authorize a claim or counterclaim or the filing of a complaint.

{¶24} Further, the language of R.C. 3767.41 does not otherwise confer standing on Twang to commence a public-nuisance-abatement action. Twang does not fall under one of the categories of entities or persons mentioned in R.C. 3767.41(B)(1) as authorized to bring a complaint under R.C. 3767.41 to abate an alleged public nuisance. Because Twang does not fall under one of the categories of parties with standing to commence a civil action under R.C. 3767.41, the legislature did not confer on Twang standing to bring a statutory-public-nuisance claim. This conclusion avoids the absurd result of Twang suing itself for the abatement of an alleged public nuisance located in the building it owns and for which it claims responsibility for creating. Twang, as owner, is not a proper plaintiff to litigate the public-nuisance claim.

{¶25} In sum, the trial court properly dismissed Twang's counterclaim because R.C. 3767.41(E) does not authorize a civil action and Twang admittedly is not one of the entities or individuals mentioned in R.C. 3767.41(B)(1) that are afforded standing to proceed on a statutory-public-nuisance claim. Consequently, we overrule the first assignment of error.

{¶26} In its second assignment of error, Twang argues the trial court erred by denying its motion for partial summary judgment on the issue of whether the building was a "public nuisance." We refrain from reviewing this assignment of error, even to determine whether the order denying partial summary judgment was final and appealable, because the issue involved is moot.

{¶27} Our duty as an appellate court is to decide controversies between parties that can be carried into effect, and we need not render an advisory opinion on a moot question or question of law that cannot affect the issues in the case. *Schwab v. Lattimore*, 166 Ohio App.3d 12, 2006-Ohio-1372, 848 N.E.2d 912, ¶ 10 (1st Dist.). The city has dismissed its claims seeking the declaration and abatement of the claimed public nuisance, and this court has upheld the dismissal of Twang's counterclaim seeking similar relief. This court can grant no relief to Twang, even if we were to hold the trial court erred in denying Twang's motion for partial summary judgment. Accordingly, we decline to address the second assignment of error.

{¶28} Next we address Twang's third assignment of error. Twang contends the trial court erred by granting summary judgment to the city on the collection claims. We review the grant of summary judgment de novo, applying the standards set forth in Civ.R. 56. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

9

{¶29} Civ.R. 56(C) mandates the entry of summary judgment if the evidence, properly submitted, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶30} Civ.R. 56(E) states that when a motion for summary judgment is properly made and supported, the nonmoving party may not rest upon the mere allegations or denials of the pleadings. Instead, the burden shifts to the nonmoving party, and the nonmoving party's response must set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party does not so respond, summary judgment, if appropriate, may be entered against the nonmoving party. *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 11.

{¶31} Twang does not dispute that the fees and fines arose under the city's ordinances and that it failed to rebut the city's evidence that it owed the fees and fines and failed to pay them. Twang argues disputed issues of material fact remain as to whether the amounts due exceed what is permissible under the Excessive Fines Clause.

{¶32} The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Eighth Amendment to the U.S. Constitution. The Excessive Fine Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.' " *Austin v. United States*, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), quoting *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

{¶33} Generally, a fine imposed as punishment is excessive under the Excessive Fines Clause "if it is grossly disproportional to the gravity of a defendant's

offense." *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), cited in *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir.1999). The Excessive Fines Clause is incorporated by the Fourteenth Amendment's Due Process Clause and applies to state and local governments. *See Timbs v. Indiana*, 586 U.S. ___, 139 S.Ct. 682, 687, 203 L.Ed.2d 11 (2019).

{¶34} When opposing summary judgment, Twang argued the city had the burden to establish that the fees and fines were not excessive under the Excessive Fines Clause. In support of this argument, Twang relied on *Etzler v. City of Cincinnati*, S.D.Ohio No. 1:07-cv-1035, 2013 WL 1196649 (Mar. 25, 2013).

{¶35} In *Etzler*, property owners filed a lawsuit against the city alleging in part that the VBML fees due under city ordinances violated the Excessive Fines Clause. To obtain summary judgment on the claim, the city was required to present evidence that the VBML fees were not constitutionally excessive. Unlike in *Etzler*, Twang did not file a claim seeking a declaration that the ordinances giving rise to the unpaid fees and fines were unconstitutional under the Excessive Fines Clause. Thus, *Etzler* does not support Twang's position.

{¶36} Here, the city moved for summary judgment on its collection claims. To establish a prima facie case on a collection claim, the city was not required to establish that the amounts due under the city's ordinances did not offend the Excessive Fines Clause. Admittedly, the facts of this case differ from ordinary collection actions because the amount of the alleged debt is based on fee and fine schedules set forth in municipal ordinances. But absent exceptions not applicable here, a duly-enacted municipal ordinance is presumptively constitutional and binding, which leaves the challenger with the burden of proving the

unconstitutionality of the ordinance. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 38, 616 N.E.2d 163 (1993); *City of Univ. Hts. v. Dachman*, 20 Ohio App.3d 26, 484 N.E.2d 199 (8th Dist.1984).

{¶37} This presumption of constitutionality applies even where, as here, the challenger's argument is that legislation is unconstitutional as applied to the specific facts of a case. *See Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 55 N.E.2d 629 (1944), paragraph six of the syllabus. Twang resists characterizing its Excessive Fine Clause argument as an as-applied constitutional challenge to the ordinances, but that is the effect of Twang's argument. The city carried no burden on this issue when moving for summary judgment on the collection claims.

{¶38} Additionally, Twang's Excessive Fine Clause challenge was not properly raised in this case. The record supports the city's position in its reply memorandum in support of partial summary judgment that Twang improperly raised the Excessive Fines Clause challenge for the first time in its memorandum opposing summary judgment.

{¶39} Civ.R. 8(C) requires that a defendant set forth any affirmative defense in its answer. Our review indicates that in Twang's answer to the amended complaint, Twang asserted a constitutional-based "Takings Clause" affirmative defense that referenced language in the city's amended complaint requesting the appointment of a receiver. That affirmative defense made no reference to the collection claims or the Excessive Fines Clause, and cannot fairly be read to include an Excessive Fine Clause challenge. We conclude that Twang's affirmative defense based on the Takings Clause was insufficient to notify the city of an affirmative defense to the collection claims based on the Excessive Fines Clause. *See Brown v.*

*Village of Lincoln Hts.*, 195 Ohio App.3d 149, 2011-Ohio-3551, 958 N.E.2d 1280, ¶ 11 (1st Dist.). This failure resulted in a waiver of the defense. *See id.* at ¶ 10.

{**¶40**} We find the application of the waiver doctrine particularly appropriate in this case because the record demonstrates Twang directly contributed to the increasing monetary obligation that it belatedly characterized as "excessive" by failing to timely use the administrative and judicial avenues afforded to obtain review or a reprieve. Twang simply ignored the city's repeated efforts to bring the property into compliance with the city's building code until after the city filed this lawsuit. Although the trial court did not specifically address the city's waiver argument in its entry, Twang's failure to timely raise the Excessive Fines Clause challenge is an alternative basis for affirming the trial court's grant of partial judgment to the city.

{**¶41**} Ultimately, the city established there was no genuine issue of material fact and that it was entitled to judgment as a matter of law on the collection claims. Accordingly the trial court did not err by granting the city's motion for summary judgment on those claims. Consequently, we overrule the third assignment of error.

{**¶42**} Finally, we turn to Twang's fourth assignment of error. Twang does not identify the judgment or order, or aspect of a judgment or order, that it believes the trial court entered in error. *See* App.R. 16(3). Instead, Twang seeks an opinion on whether the Historic Conservation Board's denial of Twang's request for a certificate of appropriateness to demolish the building can have a res judicata effect in future trial court proceedings. This is not a proper assignment of error and we disregard it, as Twang is merely seeking an advisory opinion that this court is prohibited from issuing. *See, e.g., Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio

St.3d 176, 495 N.E.2d 904 (1986), syllabus; *Youngstown State Univ. v. State Emp. Relations Bd.*, 2016-Ohio-2649, 49 N.E.3d 382 (10th Dist.); *In re A.F.*, 1st Dist. Hamilton Nos. C-190680 and C-190721, 2020-Ohio-5420, ¶ 11.

## Conclusion

**{¶43}** For the foregoing reasons, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.