[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohioans for Concealed Carry, Inc. v. Columbus*, Slip Opinion No. 2020-Ohio-6724.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6724

OHIOANS FOR CONCEALED CARRY, INC., ET AL., APPELLANTS, *v.* THE CITY OF COLUMBUS ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohioans for Concealed Carry, Inc. v. Columbus*, Slip Opinion No. 2020-Ohio-6724.]

*Civil law—Before an Ohio court may consider the merits of a legal claim, the person seeking relief must establish standing—Court of appeals' judgment affirmed.*

(No. 2019-1274—Submitted July 8, 2020—Decided December 18, 2020.)

APPEAL from the Court of Appeals for Franklin County,

No. 18AP-605, 2019-Ohio-3105.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we determine whether appellants, Ohioans for Concealed Carry, Inc. ("OCC") and Buckeye Firearms Foundation, Inc. ("BFF") (collectively, "appellants"), have standing to bring an action seeking declaratory

and injunctive relief against appellees, the city of Columbus and Columbus City Attorney Zach M. Klein (collectively, "the city") regarding two firearm-related ordinances that appellants allege are unlawful under R.C. 9.68. Because we conclude that appellants have not established standing in this case, we affirm the judgment of the Tenth District Court of Appeals.

## I. Relevant Background

{¶ 2} In May 2018, the Columbus City Council passed Columbus Ordinance 1116-2018. This ordinance, among other things, enacted two provisions of the Columbus City Code ("C.C.C.") relevant to this case, C.C.C. 2323.13 and 2323.171. C.C.C. 2323.13 is the city's weapons-under-disability ordinance and prohibits individuals who have been previously convicted of a misdemeanor domestic-violence offense from possessing a firearm, C.C.C. 2323.13(A)(3). C.C.C. 2323.171 makes it a misdemeanor, C.C.C. 2323.171(B), for a person to "knowingly acquire, have, carry, or use an illegal rate-of-fire-acceleration firearm accessory," C.C.C. 2323.171(A). According to the city, this ordinance is directed at firearm accessories known as "bump stocks." *See* C.C.C. 2323.171(C)(1).

{¶ 3} A little over a month after the city enacted these ordinances, appellants and Gary Witt, a member of OCC and a resident of Columbus, filed a complaint against the city seeking an injunction against enforcement of the ordinances as unconstitutional, based on the argument that they are preempted by R.C. 9.68—a statute pertaining to ensuring that the laws throughout Ohio regarding the right to bear arms are uniform—and seeking a declaratory judgment that C.C.C. 2323.13 and 2323.171 violate R.C. 9.68. The complaint asserted that appellants were not-for-profit Ohio corporations and were composed of firearm owners across Ohio, "including members who [were] taxpayers of the [c]ity of Columbus."

{¶ 4} The complaint asserted two causes of action. In the first, appellants and Witt sought injunctive relief against enforcement of the ordinances through a statutory-taxpayer action, as permitted by R.C. 733.59. In support, appellants and

2

Witt alleged that the implementation of the ordinances "resulted in, or is imminently likely to result in, the misapplication (and an inappropriate and unlawful expenditure) of funds of the City, by virtue of efforts by the City to advertise and promote the Ordinances, enforce the Ordinances, implement the Ordinances and defend the Ordinances." They also asserted that the ordinances were "an abuse of the City's home rule power" and "involved, or [were] reasonably likely to involve, execution of contracts with third parties concerning the advertisement, enforcement, and implementation of the unlawful provisions therein, including but not limited to contracts for public defenders for indigent defendants charged with violating the Ordinances." Appellants and Witt alleged that they were seeking "to enforce the public right of the people to keep and bear arms and all peripheral rights guaranteed to them by the Constitution of Ohio, the Constitution of the United States of America and R.C. 9.68."

{¶ 5} In the second cause of action, appellants and Witt asserted they were entitled, pursuant to R.C. 9.68, to a declaration that the ordinances are unlawful, "as well as every other ordinance enacted, promulgated and/or maintained by Defendant City that purports to regulate the right of a person to possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components and ammunition." Appellants and Witt also requested an award of attorney fees under R.C. 9.68.

{¶ 6} In tandem with filing the complaint, appellants and Witt also moved for a temporary restraining order against the city and a preliminary injunction, both of which sought to preclude the city from enforcing C.C.C. 2323.13 and 2323.171. The trial court granted the temporary restraining order, enjoining the city from all enforcement activity associated with C.C.C. 2323.13 and 2323.171. In opposition to the preliminary-injunction motion, the city argued, in part, that appellants and Witt had little chance of success on the merits because they lacked standing to bring their claims.

{¶ 7} After a hearing on the preliminary injunction, the trial court held that Witt had taxpayer standing under R.C. 733.59. Because the city's ordinances "directly impact the rights" of appellants' members, the trial court also found that appellants had organizational standing. The trial court ultimately found C.C.C. 2323.171 to be unconstitutional and granted a permanent injunction enjoining its enforcement. However, the trial court denied injunctive relief regarding C.C.C. 2323.13.

{¶ 8} On appeal, the city challenged the trial court's finding that appellants and Witt had standing. The Tenth District Court of Appeals agreed with the trial court that Witt had taxpayer standing for injunctive relief under R.C. 733.59, but concluded that appellants had failed to establish that they had standing under R.C. 733.59, R.C. 9.68, or R.C. Chapter 2721, Ohio's Declaratory Judgment Act.[1] 2019-Ohio-3105, 140 N.E.3d 1215, ¶ 46 (10th Dist.).

{¶ 9} Appellants sought discretionary review, and we accepted the following proposition of law: "A nonprofit firearms-rights association has standing to challenge as unconstitutional municipal ordinances that violate R.C. 9.68 by maintaining an action for declaratory and injunctive relief under R.C. 9.68, R.C. 733.59, and/or Ohio Revised Code Chapter 2721." *See* 157 Ohio St.3d 1495, 2019-Ohio-4840, 134 N.E.3d 1210.

{¶ 10} On December 18, 2019, while this appeal was pending, the city repealed C.C.C. 2323.171. *See* Columbus Ordinance 3189-2019. The city explained in its merit brief that it repealed the ordinance because the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives had issued a rule stating

---

1. The court of appeals also found that OCC and BFF failed to establish standing under the public-right doctrine. However, we declined review of appellants' proposition of law challenging this holding. In addition, appellants concede in their reply brief that "no 'public rights' standing argument is present in this appeal." Thus, we do not address the public-right-standing doctrine in this decision.

4

that a firearm with a bump-stock accessory was a "machinegun," the possession of which is already a felony under federal and state law.

## II. Analysis

{¶ 11} As a threshold matter, we address the city's assertion that appellants' claims regarding C.C.C. 2323.171, the bump-stock ordinance, are moot because that ordinance was repealed while this appeal was pending. Appellants argue that because the city has not repealed the weapons-under-disability ordinance, C.C.C. 2323.13, and there is also a reasonable probability that the city will attempt to enact a similar ordinance to the bump-stock ordinance in the future, this appeal is not moot. Moreover, appellants argue that they may still be entitled to an award of attorney fees under R.C. 9.68(B). We find that the issue whether appellants have standing remains relevant to the resolution of attorney fees related to appellants' challenge to C.C.C. 2323.171. Thus, we proceed to determine the question of standing.

### A. Standing

{¶ 12} It is well established that prior to an Ohio court's considering the merits of a legal claim, "the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27. At a minimum, common-law standing requires the litigant to demonstrate that he or she has suffered (1) an injury (2) that is fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22. Standing does not turn on the merits of the plaintiffs' claims but rather on "whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 7. Standing may also be conferred by statute. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75,

495 N.E.2d 380 (1986). Whether appellants have established standing is a question of law, which we review de novo. *See Moore* at ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

{¶ 13} Standing " ' "is not dispensed in gross," ' " it must be demonstrated for each claim and each form of relief. *Preterm-Cleveland, Inc. v. Kasich*, 153 Ohio St.3d 157, 2018-Ohio-441,102 N.E.3d 461, ¶ 30, quoting *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.E.2d 737 (2008), quoting *Lewis v. Casey*, 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), fn. 6. Here, appellants asserted two claims for relief in their complaint: (1) a statutory-taxpayer action for injunctive relief under R.C. 733.59 and (2) a declaratory-judgment action based on the argument that R.C. 9.68 provides them the right to challenge the ordinances. Appellants assert that as nonprofit firearms-rights associations, they have standing to challenge municipal ordinances that violate R.C. 9.68. They do not, however, seek to establish standing through traditional common-law principles. Instead, appellants claim that they have standing through three alternative, statutory means: (1) statutory standing under R.C. 9.68, (2) taxpayer standing under R.C. 733.59, and (3) statutory standing under the Declaratory Judgment Act.

*B. Standing Under R.C. 9.68*

{¶ 14} Appellants assert several theories of standing under R.C. 9.68. We first address appellants' argument in their complaint that R.C. 9.68 provides them with standing because it "provides Plaintiffs a private right of action to challenge any ordinance, rule or regulation in conflict with it."

{¶ 15} R.C. 9.68(A) states that the right to keep and bear arms is a "fundamental individual right" that is a "constitutionally protected right in every part of Ohio." R.C. 9.68(A) also identifies the "need to provide uniform laws throughout the state" regulating the ownership and possession of firearms. The former version of R.C. 9.68(B), which was in effect at the time this case was filed,

also stated: "In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section."[2] Sub.H.B. No. 347, 151 Ohio Laws, Part IV, 8138, 8140.

{¶ 16} Appellants assert that R.C. 9.68(B)'s reference to "any person, group, or entity that prevails in a challenge to an ordinance," means that anyone may challenge an ordinance as being in conflict R.C. 9.68, and that the statute thereby confers standing. The Tenth District rejected this argument, however, noting that R.C. 9.68 is silent regarding standing or creating a cause of action. We agree with the court of appeals.

{¶ 17} As this court noted in *ProgressOhio.org, Inc.*, a statute's silence "as to who has standing to maintain a constitutional challenge to the legislation does not render the statute ambiguous," nor "will we read the statutory silence as clearly expressing an intention to abrogate the common-law requirements for standing." 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 22. Thus, even if we read the language in former R.C. 9.68(B) to imply the availability of a cause of action to challenge an ordinance, that would not abrogate the need for a "person, group, or entity" to establish standing for purposes of pursuing a civil action under that statute.

{¶ 18} Appellants also argue that they have standing under R.C. 9.68 to challenge the ordinances in this case because they have established standing in

---

2. The General Assembly amended R.C. 9.68 in 2019, and the amendment became effective while this appeal was pending. 2018 Am.Sub.H.B. No. 228. As amended, R.C. 9.68(B) expressly states that "[a] person, group, or entity adversely affected by any manner of ordinance, rule, regulation, resolution, practice, or other action enacted or enforced by a political subdivision in conflict with division (A) of this section may bring a civil action against the political subdivision seeking damages from the political subdivision, declaratory relief, injunctive relief, or a combination of those remedies." However, we limit our analysis to former R.C. 9.68(B) because that was the version in effect when appellants filed their complaint. *See* R.C. 1.58(A)(1) ("The reenactment, amendment, or repeal of a statute does not * * * [a]ffect the prior operation of the statute or any prior action taken thereunder").

other cases challenging different ordinances. Indeed, appellants assert that this court's review of the merits in cases like *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, in which OCC was a party, have already implicitly recognized OCC's standing under R.C. 9.68. We reject this argument.

{¶ 19} This court's decision in *Clyde* has no bearing on the standing analysis in this case. In *Clyde*, OCC filed an action seeking an injunction and an order striking down a municipal ordinance that prohibited the carrying of concealed handguns in Clyde city parks. *Id*. at ¶ 1, 19. This court ultimately concluded that the ordinance was unconstitutional under the Home Rule Amendment, Article XVIII, Section 3, of the Ohio Constitution, because the ordinance was an exercise of the municipality's police power that conflicted with a general law. *Id*. at ¶ 1.

{¶ 20} The fact that a party has established standing in a prior case does not establish the party's standing in every case filed thereafter. The question of standing depends on whether the plaintiffs have alleged some basis—grounded in common or statutory law—that entitles them to have a court hear their case. *See State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 178-179, 298 N.E.2d 515 (1973), quoting *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636, 641 (1972) (" 'Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 [1962], * * * as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as a capable of judicial resolution," *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 [1968] * * *' " [ellipses added in *Dallman*]). Thus, standing must be determined on the allegations presented *in each case*.

{¶ 21} Finally, appellants also seem to contend that they have standing simply because they are entitled to relief under R.C. 9.68 on the merits of their challenge. Specifically, appellants argue in their merit brief that "[w]hether any Plaintiff owned or planned to own any of the several firearm components banned by the City * * * is entirely beside the point. Columbus undid what the General Assembly did in enacting statewide preemption." As we stated above, however, standing does not turn on the merits of the plaintiffs' claims but rather on "whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc.*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 7.

{¶ 22} In sum, we find no basis under former R.C. 9.68, which was in effect at the time this case was filed, to conclude that appellants have established standing in this case.

### C. Taxpayer Standing Under R.C. 733.59

{¶ 23} Appellants next argue that they have standing under R.C. 733.59 to bring a taxpayer action for injunctive relief. When a statute provides for judicial review, " 'the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.' " *Middletown*, 25 Ohio St.3d at 75-76, 495 N.E.2d 380, quoting *Sierra Club*, 405 U.S. at 732, 92 S.Ct. 1361, 31 L.Ed.2d 636. Accordingly, we begin with R.C. 733.59, which sets forth the prerequisites for a taxpayer's action:

> If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation.

"Taxpayer," as used in R.C. 733.59, contemplates and includes " 'any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, volunteers to enforce a right of action on behalf of and for the benefit of the public.' " *State ex rel. White v. Cleveland*, 34 Ohio St.2d 37, 40, 295 N.E.2d 665 (1973), quoting *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1, 215 N.E.2d 592 (1966), paragraph two of the syllabus.

{¶ 24} Nowhere within the complaint do appellants allege that they are citizens, electors, freeholders, or taxpayers themselves. Instead, they allege that they are "not-for-profit Ohio corporation[s]" *composed of* "firearm owners across the state of Ohio, including members who are taxpayers of the City of Columbus." Nevertheless, appellants argue that they have associational standing under R.C. 733.59 by virtue of Witt's individual-taxpayer standing. Associational standing is for organizations who sue on behalf of their members. *See Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir.1998) ("An association * * * can have standing as a representative of its members"). Notably, however, appellants' complaint does not allege that they are bringing a taxpayer action *on behalf of Witt*. The complaint alleges that the letter sent to initiate the taxpayer action, as required under the statute, was sent by "Plaintiff OCC and Plaintiff BFF, *on behalf of themselves*, and Plaintiff Witt on behalf of himself." (Emphasis added.) Here, it is clear that appellants are suing on behalf of themselves. As a result, Witt's individual-taxpayer standing does not confer standing upon appellants.

{¶ 25} Appellants also argue that the Tenth District's judgment must be reversed because although the court stated that "Ohio courts have implicitly recognized the standing of associations in statutory taxpayer actions," 2019-Ohio-3105, 140 N.E.3d 1215, at ¶ 37, it ignored appellants' associational standing. And allowing this judgment to stand would "undo legions of cases," including *State ex rel. Fisher v. Cleveland*, 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500. We disagree.

**{¶ 26}** Our decision in *Fisher* addressed only the specific standing argument that had been presented in that case; namely, whether relators had asserted a matter that concerned a public right or benefit. "A taxpayer action is properly brought only when the right under review in the action is one benefitting the public." *Id.* at ¶ 10. In *Fisher*, the civil suit had been initiated by an individual, Robert Fisher, and the Association of Cleveland Fire Fighters, Local 93 of the International Association of Fire Fighters. Our analysis did not reach the issue whether the Association of Cleveland Fire Fighters had properly asserted standing as a taxpayer, either alone or on behalf of its individual member, because we concluded that the action did not affect a public right. *Id.* ¶ 14.

**{¶ 27}** Here, appellants fail to identify the other cases that are purportedly among the "legions" we would have to undo if we affirmed the court of appeals' judgment. Nonetheless, we note that the court of appeals recognized that the cases it cited in support of its statement that Ohio courts have implicitly recognized the standing of organizations in taxpayer actions did not "directly address standing nor inform what the associations alleged in their complaints, i.e., did they allege they met the definition of taxpayer," 2019-Ohio-3105, 140 N.E.3d 1215, at ¶ 37. Nor did the cases address associational standing. *See id.*, citing *State ex rel. Jones v. Hamilton Cty. Bd. of Commrs.*, 124 Ohio App.3d 184, 187, 705 N.E.2d 1247 (1st Dist.1997); *Natl. Elec. Contrs. Assn. v. Mentor*, 108 Ohio App.3d 373, 380, 670 N.E.2d 1042 (11th Dist.1995).

**{¶ 28}** The court of appeals also cited *Ohioans for Concealed Carry, Inc. v. Cleveland*, 2017-Ohio-1560, 90 N.E.3d 80 (8th Dist.). We find this case instructive. In *Ohioans for Concealed Carry, Inc.*, the Eighth District noted that the requirement in R.C. 733.59 that a written request be served on the city law director asking that he or she initiate suit on behalf of the city is a mandatory prerequisite to a taxpayer action. *Id.* at ¶ 42. But OCC had sent the letter on the individual plaintiff's behalf, and R.C. 733.59 "does not authorize taxpayer actions

by proxy," *id*. at ¶ 43, and OCC "is not an individual taxpayer or citizen," *id*. at ¶ 44. For these reasons, the court of appeals upheld the trial court's determination that the individual plaintiff lacked standing to pursue a taxpayer action because he did not properly initiate the taxpayer action. *Id*.

{¶ 29} Here, the complaint alleged that Witt sent the letter to initiate the taxpayer action on behalf of himself, and Witt's taxpayer action in this case is proceeding. And the complaint alleged that appellants sent the letter to initiate the taxpayer action "on behalf of themselves." Thus, appellants have not alleged a taxpayer action on Witt's behalf. Because they are not taxpayers in their own right, they have not established standing to bring a taxpayer action for injunctive relief under R.C. 733.59 to challenge the ordinances.

### D. Standing Under the Declaratory Judgment Act

{¶ 30} Appellants also assert that they have standing under R.C. 2721.03 to seek a declaration that the ordinances are unlawful. R.C. 2721.03 pertains only to "person[s] whose rights, status, or other legal relations are affected by a constitutional provision, statute, * * * [or] municipal ordinance." The three prerequisites to declaratory relief include "(1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org, Inc.*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 19; *see also Moore*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, at ¶ 49.

{¶ 31} Appellants argue that these requirements apply to them and that the traditional standing requirements must "yield" here because they are seeking a declaration that the city's ordinances are unconstitutional. Consequently, appellants argue that they do not need to show that they have actually been injured or that they have suffered any particularized harm. Additionally, appellants assert that they do not need to wait for the ordinances to be enforced before challenging the constitutionality of the ordinances.

{¶ 32} Although a declaratory-judgment action generally contemplates that the action is brought before an injury-in-fact has occurred, a plaintiff must nonetheless demonstrate "actual present harm or a significant possibility of future harm to justify pre-enforcement relief." *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir.1998). Certain impending injury is sufficient to obtain preventative relief; a plaintiff need not wait for an injury to actually occur. *Id*.

{¶ 33} In *Peoples Rights Org., Inc.*, the plaintiffs challenged in federal court a Columbus City Code provision that prohibited the sale, transfer, acquisition, or possession of any assault weapon. *Id*. at 527-528. The Sixth Circuit Court of Appeals concluded that the individual plaintiffs established standing to pursue their declaratory-judgment action based on a significant possibility of future harm. *Id*. at 530-531. The court also determined that the organization plaintiff established associational standing. *Id*. at 531. A review of the allegations in the complaint is instructive.

{¶ 34} In that case, the organization plaintiff, Peoples Rights Organization, Inc. ("PRO"), and two of its members brought a pre-enforcement action seeking a declaration that a Columbus City Code provision prohibiting assault weapons was unconstitutional. *Id*. at 526. PRO alleged that its members owned firearms that may have been defined as "assault weapons" under the ordinance. *Id*. at 528-529. They also alleged that members had not registered their firearms, because they were unsure whether they qualified as "assault weapons" under the ordinance. *Id*. at 528. The complaint alleged that the individual plaintiffs and members of PRO owned semiautomatic handguns and that they could not determine whether those weapons constituted "assault weapons" under the ordinance. *Id*. One of the individual plaintiffs alleged that he owned a rifle with a detachable magazine, which he believed was the only magazine that would fit the rifle, but that he could not determine whether that weapon constituted an "assault weapon" under the ordinance. *Id*.

{¶ 35} Here, in stark contrast, the only allegation in appellants' complaint relating to firearms is that appellants' members own firearms. The complaint contains no allegation that the members own firearms with bump stocks or some other accessory that could be considered within the purview of the ordinance. It also lacks any allegation that the members wish to own bump stocks. And there is no allegation that members offer bump stocks for sale. The complaint similarly contains no allegations specific to the weapons-under-disability ordinance. For example, there is no allegation that any of appellants' members have been charged with or convicted of a misdemeanor offense of domestic violence. The complaint is simply devoid of any allegation on which we could conclude the significant possibility of future injury.[3]

{¶ 36} In *Peoples Rights Org., Inc.*, the Sixth Circuit noted, "It is clear from the complaint the predicament that [the plaintiffs] face." *Id.*, 152 F.3d at 528. Here, however, appellants have alleged no predicament. Nonetheless, in support of their cause of action for declaratory relief, they allege that they are entitled to a

---

3. The first dissenting opinion suggests that because this case has proceeded past the close of the pleadings, the standing inquiry resembles the standard for a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Applying that standard, that dissent concludes that the *city* has failed to demonstrate beyond a reasonable doubt that appellants cannot prove that any of their members have been injured by the ordinance because "it is possible" appellants could prove that a member has been harmed by the ordinances. Dissenting opinion of Kennedy, J., at ¶ 54. But the standard for motions for judgment on the pleadings pursuant to Civ.R. 12(C) is still grounded in the pleadings. Indeed, "[t]he trial court must limit its inquiry to the material allegations in the pleadings—accepting those allegations and all reasonable inferences as true—and, if it is clear from the pleadings that plaintiff could prove no set of facts which would entitle him to relief, judgment on the pleadings is appropriate as a matter of law." *Fisher v. Ahmed*, 2020-Ohio-1196, 153 N.E.3d 612, ¶ 11 (9th Dist.). Here, there are no allegations in the complaint on which to base the first dissenting opinion's assumptions about appellants' potential proof of harm. Moreover, "[w]hile the proof required to establish standing increases as the suit proceeds, * * *, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). We also note, as does the first dissenting opinion, that appellants presented no evidence of standing at the trial court's hearing on the motion for a preliminary injunction. In fact, appellants asserted that no evidence was required to rebut the city's standing challenge and that the issues to be argued at the hearing were appellants' and Witt's "legal standing and the efficacy of the claims raised in the [c]omplaint."

declaration that the ordinances, "as well as every other ordinance enacted, promulgated and/or maintained by Defendant City that purports to regulate the right of a person to possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components and ammunition" are unlawful. As we stated in *ProgressOhio.org, Inc.*, an "idealistic opposition" to a challenged law is insufficient to establish standing under the Declaratory Judgment Act. 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 19.

{¶ 37} Appellants also argue in their merit brief that Ohio's Declaratory Judgment Act broadly authorizes actions for declaratory relief predicated on constitutional or nonconstitutional grounds, and that such relief "should be employed to ensure the City's unconstitutional Ordinances will not subject firearms owners to new municipal criminal penalties." The general availability of an action for declaratory relief to challenge an ordinance is not the subject of this appeal. This appeal relates to appellants' standing to pursue such relief. The strength of the merits of a claim for declaratory relief is not relevant to a plaintiff's burden to establish standing. Standing depends on "whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc.* at ¶ 7. Thus, we decline the invitation to establish a blanket rule that a certain plaintiff will always have standing under the Declaratory Judgment Act to challenge municipal ordinances under R.C. 9.68. We conclude that in this case, on the allegations in the complaint and on the arguments presented, appellants have not established standing.

*E. Appellants' Future Ability to Establish Standing Is Not Before this Court*

{¶ 38} Both dissenting opinions suggest that appellants *could* demonstrate standing based on harm to one of their members by the city ordinances. Dissenting opinion of Kennedy, J., at ¶ 54; dissenting opinion of DeWine, J., at ¶ 64. In doing so though, each dissenting opinion implicitly acknowledges that appellants have not alleged or proved a basis for standing in this case at this time.

**{¶ 39}** In an attempt to circumvent this fact, the second dissenting opinion fashions a newly minted argument that offers appellants an opportunity to reargue their standing case with the benefit of the court's collective agreement that they have not alleged a proper basis for standing. This approach not only would relieve appellants of their well-established burden to establish standing and present the court with a justiciable claim, but also would provide appellants with an unprecedented belief that even if they cannot establish standing on their asserted theory, they can try again on remand.

**{¶ 40}** At every level, appellants have argued that they have standing under R.C. 9.68 to pursue injunctive *and* declaratory relief *without* having to demonstrate harm. Indeed, in appellants' reply brief to this court, they made the following statements: (1) "The City's arguments about the standing of [appellants] under R.C. 9.68 fail because the requirements for standing do not require actual injury or particularized harm for relief from the City's firearm Ordinances" and (2) "Neither [appellant] need demonstrate that its members own guns. * * * The interest in uniformity is, in and of itself, sufficient to create standing * * *." And even though the claim for injunctive relief may proceed on Witt's taxpayer standing under R.C. 733.59, appellants' proposition of law is seeking a broad, bright-line rule that "[a] non-profit firearms-rights association has standing to challenge as unconstitutional municipal ordinances that violate R.C. 9.68 by maintaining an action for declaratory *and* injunctive relief under R.C. 9.68, R.C. 733.59, and/or Ohio Revised Code Chapter 2721." (Emphasis added.) Appellants have requested that this court reverse the Tenth District's standing decision on its merits, not because it was "premature," dissenting opinion of DeWine, J., at ¶ 58. We should not allow a party *another* opportunity to establish standing on remand after the issue was argued by the parties and determined by the court.

**{¶ 41}** Moreover, the second dissenting opinion states that appellants "were never individually put to the burden of proving standing in the proceeding below."

Dissenting opinion of DeWine, J., at ¶ 63. Yet appellants had ample opportunity to prove standing below; first in their complaint and again when the city challenged their standing in its memorandum in opposition to a preliminary injunction. Nevertheless, the dissenting opinions assert that the city missed the boat for not challenging standing via the proper procedural vehicle or failing to "show beyond doubt," dissenting opinion of Kennedy, J., at ¶ 54, appellants lacked standing when it is *the plaintiff's* burden to allege a basis for standing. *See also* dissenting opinion of DeWine, J., at ¶ 63; *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800, ¶ 24 ("To have standing, the party *bringing the action* must assert a personal stake in the outcome of the action" [emphasis sic]); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasizing that a plaintiff's burden to establish standing is "an indispensable part of the plaintiff's case").

{¶ 42} But contrary to the second dissenting opinion's suggestion, there is no magical moment during litigation that a plaintiff is relieved of its burden to establish standing. It is a "jurisdictional requirement" that must be met for a party to maintain a lawsuit. *Dallman*, 35 Ohio St.2d at 179, 298 N.E.2d 515. Thus, standing "may be raised at any time during the pendency of the proceedings," *New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 513 N.E.2d 302 (1987), paragraph two of the syllabus, including by a reviewing court sua sponte, *Dallman* at 178 (this court sua sponte raising the issue of standing and dismissing the appeal based on a party's failure to allege a personal stake in the outcome of the proceedings).

{¶ 43} Further, the case at hand is different than *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir.2004), on which the second dissenting opinion relies to promote such a view. In that case, the district court explicitly declined to decide whether Planned Parenthood had standing, because another plaintiff had standing to sue, and Planned Parenthood requested that the Ninth Circuit do the same, decline review of its standing, in an attempt to have the merits

of the appeal decided. *Id.* at 917-918. The trial court here made no such caveat as to appellants' standing, and appellants have argued the exact opposite on appeal, asserting that they have standing under the theories asserted and that the Tenth District should affirm their own standing to bring their claims for declaratory *and* injunctive relief.

{¶ 44} In sum, there is no basis for a remand on standing here. We have not identified an error in the Tenth District's decision nor have we announced a new test or standard for the lower courts to apply. The threshold requirement that a plaintiff must establish standing is far from a new concept in the law. *See Dallman* at 179 ("It is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has * * * some real interest in the subject matter of the action"). To hold as we do today, that appellants have not met that threshold requirement does not deprive them of another opportunity to seek relief from the city ordinances under R.C. 9.68. Our holding simply means that they, like every plaintiff who files a lawsuit, must establish standing to maintain their suit. *See Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469, 715 N.E.2d 1062 (1999) (" 'It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue' "). Here, appellants adopted a flawed theory of standing and continued to rely on it throughout the adversarial process. Because their theory is incorrect in this case, we cannot remedy it here. For whatever case appellants may file in the future, they will have the benefit of this court's decision today as well as the dissenting opinions' observations on how to properly establish standing.

### III. Conclusion

{¶ 45} For the foregoing reasons, we conclude that appellants have not established standing under R.C. 9.68, R.C. 733.58, or R.C. Chapter 2721 to challenge the ordinances. Therefore, we affirm the court of appeals' judgment.

Judgment affirmed.

FRENCH, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion joined by FISCHER, J.

_____

**KENNEDY, J., dissenting.**

{¶ 46} Because appellees, the city of Columbus and Columbus City Attorney Zach M. Klein (collectively, "the city"), cannot demonstrate beyond doubt that appellants, Ohioans for Concealed Carry, Inc., and Buckeye Firearms Foundation, Inc., can prove no set of facts establishing that they have standing to sue on behalf of their members, I dissent and would reverse the judgment of the Tenth District Court of Appeals dismissing the associations from this litigation and would remand this matter for a trial on the merits of the request for a permanent injunction.

{¶ 47} In May 2018, Columbus City Council passed Ordinance 1116-2018, which enacted Columbus City Code ("C.C.C.") 2323.13 (penalizing the possession of weapons by (1) those who have been convicted of various felony offenses that are not barred by state law, (2) those who have been convicted of misdemeanor domestic violence, and (3) those who are subject to certain domestic-violence protection orders) and 2323.171 (criminalizing the possession of firearm components such as bump stocks, which accelerate the rate of fire).

{¶ 48} Ohioans for Concealed Carry, Buckeye Firearms, and Gary Witt—a member of Ohioans for Concealed Carry and a resident of Columbus—filed a complaint seeking a permanent injunction and a motion seeking a preliminary

injunction against the city's enforcement of the new ordinances, asserting that the ordinances conflicted with R.C. 9.68, a general law permitting Ohioans to possess firearms, firearm parts, firearm components, and ammunition "[e]xcept as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law."

{¶ 49} Relevant here, the city responded by asserting that Ohioans for Concealed Carry and Buckeye Firearms had failed to sufficiently allege that any of their members would have standing to sue to enjoin the ordinances, and at the preliminary-injunction hearing, the parties did not present any evidence on the issue of associational standing. The trial court found that Ohioans for Concealed Carry, Buckeye Firearms, and Witt had standing to sue, and it permanently enjoined the city from enforcing the bump-stock ban, C.C.C. 2323.171, but denied the request to enjoin enforcement of the weapons-under-disability law, C.C.C. 2323.13.

{¶ 50} The Tenth District Court of Appeals reversed the trial court's judgment and remanded the case to the trial court, concluding that the trial court erred in granting a permanent injunction when the matter had been set for a hearing on the request for a preliminary injunction. 2019-Ohio-3105, 140 N.E.3d 1215, ¶ 57, 59 (10th Dist.). It also held that Ohioans for Concealed Carry and Buckeye Firearms lacked standing to sue on behalf of their members. In so holding, the court of appeals looked only to the complaint and held that the associations had not adequately alleged that their members would have had standing to sue in their own right. *Id*. at ¶ 45.

{¶ 51} Standing is established "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Therefore, the stage of the proceeding (such as on a motion to dismiss, a motion for judgment

on the pleadings, or a motion for summary judgment) dictates the standard of review.

{¶ 52} The court of appeals reviewed the sufficiency of the complaint's allegations when analyzing whether Ohioans for Concealed Carry and Buckeye Firearms have standing to sue on behalf of their members. However, it failed to apply the applicable standard of review. When a defendant challenges the adequacy of a complaint after the close of pleadings, a court construes as true the material allegations in the complaint and draws all reasonable inferences from them in favor of the nonmoving party and decides whether it is beyond doubt that the plaintiff can prove no set of facts entitling it to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569-570, 664 N.E.2d 931 (1996).

{¶ 53} An association has standing to bring a lawsuit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *State ex rel. Food & Water Watch v. State*, 153 Ohio St.3d 1, 2018-Ohio-555, 100 N.E.3d 391, ¶ 18. An association suing as a representative of its members must have "at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). However, a member is not required to be a named plaintiff. *See id.* at 547, fn. 2 (standing was not defeated when a union was the named party and the trial court had denied a motion to amend the complaint to add members); *see also Food & Water Watch* at ¶ 18 (associational standing may apply when neither the claim asserted nor the relief requested requires the participation of individual members).

{¶ 54} The city has failed to show beyond doubt that Ohioans for Concealed Carry and Buckeye Firearms cannot prove that any of their respective members

have been injured by the ordinances. The complaint describes both entities as associations of firearm owners and Columbus taxpayers, and it alleges that they "seek to enforce the public right of the people to keep and bear arms and all peripheral rights guaranteed to them by the Constitution of Ohio, the Constitution of the United States of America and R.C. 9.68." It is possible that they could prove that at least one member from each association has been harmed by the ordinances, either because he or she has been prohibited from owning or possessing a rate-of-fire acceleration device or because he or she has been disarmed in Columbus by virtue of a disqualifying conviction or a domestic-violence protection order. Similarly, it is possible that they could prove that they each have a member who has been prosecuted or threatened with prosecution under those ordinances or who objects to spending tax dollars to enforce them.

{¶ 55} "[A] plaintiff or relator is not required to prove his or her case at the pleading stage and need only give reasonable notice of the claim." *State ex rel. Harris v. Toledo*, 74 Ohio St.3d 36, 37, 656 N.E.2d 334 (1995). The associations have met that burden here.

{¶ 56} Lastly, the fact that the Columbus City Council repealed C.C.C. 2323.171 (the bump-stock ban) after we accepted jurisdiction in this case does not render any part of this case moot. As the United States Supreme Court has explained, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Internatl. Union, Local 1000*, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012). Such "maneuvers designed to insulate a decision from review by [a court] must be viewed with a critical eye." *Id.* And here, the associations have a continuing interest in vindicating their standing to challenge criminal ordinances that limit their members' right to keep and bear arms and a continuing interest in seeking an award of attorney fees, costs, and nominal damages if they succeed in

the trial court. *See* R.C. 9.68; *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), fn. 11.

{¶ 57} I therefore would reverse the judgment of the court of appeals dismissing Ohioans for Concealed Carry and Buckeye Firearms from the lawsuit. Because this court did not accept any other issue for review, this matter should be remanded to the trial court to conduct an evidentiary hearing on the request for a permanent injunction.

---

**DeWine, J., dissenting.**

{¶ 58} In my view, it was premature for the Tenth District Court of Appeals to determine that Ohioans for Concealed Carry, Inc., and Buckeye Firearms Foundation, Inc. (collectively, "the gun-rights groups"), lack standing. I would leave that matter for further proceedings in the trial court. I dissent from the majority's decision to do otherwise.

{¶ 59} The procedural posture of this case is unique. Gary Witt and the gun-rights groups filed a complaint seeking to enjoin the city's enforcement of two Columbus code provisions. At the same time, the gun-rights groups and Witt filed a motion for a preliminary injunction. After a hearing on the motion, the trial court permanently enjoined the city from enforcing Columbus City Code 2323.171. Importantly, at no point in the trial court did the city move to dismiss the gun-rights groups or Witt from the lawsuit for lack of standing. It did argue generally, however, that injunctive relief should be denied because all the parties lacked standing.

{¶ 60} On appeal in the Tenth District, the city argued that the trial court should not have granted the injunction, because none of the parties had standing. The Tenth District concluded that Witt had standing to maintain a claim under R.C. 733.59. 2019-Ohio-3105, 140 N.E.3d 1215, ¶ 32 (10th Dist.). The court of appeals also determined that the trial court should not have issued a permanent injunction

when the matter had been set for a hearing on only a preliminary injunction. *Id*. at ¶ 56-57. As a consequence, it remanded the matter to the trial court for further proceedings.

{¶ 61} The city did not challenge the holding that Witt possessed standing. So we must assume for present purposes that the court of appeals' decision on that issue was correct. Curiously, though, after concluding that Witt had standing, the Tenth District then concluded that the gun-rights groups did not have standing. *Id*. at ¶ 46. This was unnecessary. On a claim for injunctive relief, only one plaintiff needs to establish standing to assert a claim in order for a court to have subject-matter jurisdiction over the claim. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006), fn. 2 (noting that the court of appeals did not determine whether other plaintiffs had standing, because the presence of one plaintiff with standing is sufficient to make a case justiciable); *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 16 ("[I]t is sufficient for purposes of jurisdiction that at least one plaintiff has standing for the claims of the remaining plaintiffs to be heard and the court to proceed to decide the case on the merits"). Based on the determination by the court of appeals that Witt had standing, the trial court had the authority to issue injunctive relief. So there was no need for the court of appeals to decide whether the gun-rights groups possessed standing.

{¶ 62} The majority argues that a remand would relieve "appellants of their well-established burden to establish standing and present the court with a justiciable claim." Majority opinion at ¶ 39. Indeed, the authority cited by the majority deals largely with whether a claim is justiciable. *See id.* at ¶ 41, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). But of course, "justiciablity" is not the issue here. Because we must assume that Witt had standing, the claim is justiciable. *See Dept. of Commerce v. United States House of Representatives*, 525 U.S. 316, 330-334, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999)

24

(holding that the presence of one plaintiff with standing is all that is needed to make claim justiciable, and finding it unnecessary to consider the standing of the other plaintiffs).

{¶ 63} It is of course true that even though only one plaintiff need have standing for a court to issue injunctive relief, a court may still dismiss parties without a personal stake in the outcome. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 (9th Cir.2004), fn. 6 (noting that because one plaintiff had standing, there was no reason to consider the standing of the other plaintiffs for purposes of appeal, but on remand, the district court may need to determine whether the party was a proper plaintiff because only proper parties may enforce an injunction). But the problem that I have with the majority's decision to affirm the court of appeals' dismissal of the gun-rights groups as parties for lack of standing is that the groups were never individually put to the burden of proving standing in the proceeding below. The city did not move to dismiss any of the plaintiffs from the lawsuit for lack of standing nor did it move for summary judgment as to any of the plaintiffs. The city did argue that the court lacked jurisdiction to grant injunctive relief because all three of the plaintiffs lacked standing, but all that was necessary to defeat this argument was a showing that any one plaintiff had standing.

{¶ 64} As the other dissent points out, it may be possible for the gun-rights groups to establish associational standing by showing that they have a member who has been injured or threatened with injury by the Columbus provisions. Dissenting opinion of Kennedy, J., at ¶ 54. The matter is being remanded to the trial court. If the city believes there are grounds to dismiss the gun-rights groups from the case for lack of standing, it can file an appropriate motion, the gun-rights groups can respond, and the trial court can rule accordingly.

{¶ 65} A remand that allows for the possibility of further proceedings on the standing issue seems particularly appropriate here. The court of appeals reversed the judgment granting a permanent injunction because the trial court's

consolidation of the matter with the preliminary injunction deprived the city of "a full and fair opportunity to present evidence." 2019-Ohio-3105, 140 N.E.3d 1215, at ¶ 57. The gun-rights groups deserve the same consideration.

{¶ 66} I would reverse the decision of the court of appeals dismissing the gun-rights groups from the action for lack of standing and remand the matter to the trial court. Because the majority does otherwise, I respectfully dissent.

FISCHER, J., concurs in the foregoing opinion.

_____

Haynes, Kessler, Myers & Postalakis, Inc., David S. Kessler, Stephen P. Postalakis, and Eric B. Hershberger; and Barney DeBrosse, L.L.C. and Derek A. DeBrosse, for appellant Ohioans for Concealed Carry, Inc.

James P. Sean Maloney; and Ronald Lemieux, for appellant Buckeye Firearms Foundation, Inc.

Zach Klein, Columbus City Attorney, Richard N. Coglianese, City Solicitor General, and Lara N. Baker-Morrish, for appellees.

_____